JAMES B. EADS, Plaintiff in Error, v. THE CITY OF CARONDELET; Defendant in Error.

1. *Contract — Acceptance — Mutual Assent.*—Where a city council passed an ordinance, first accepting a written proposal touching the erection of certain machine-shops, etc., and then providing the means for carrying out that acceptance, not merely or exclusively on the terms proposed, but "on such further conditions as may be deemed necessary," and further authorizing the mayor to enter into a written agreement relative to such proposition: *held,* that the contract was not complete and could not be enforced against the city until its terms were fully agreed upon and the contract closed by writing. An absolute acceptance of a proposal, coupled with any qualification or condition, will not be regarded as a complete contract, because there at no time existed the requisite mutual assent to the same thing in the same sense.

2. *Contract — Parol, must be put in writing, when.* — When a parol agreement is assented to, which it is understood between the parties is to be put into writing, it is not binding till it is put in that form.

*Appeal from St. Louis Circuit Court.*

*Glover & Shepley,* for plaintiff in error.

I. The second section of defendant's ordinance did not have the effect to withdraw the positive acceptance made in the first section,

or in the least to modify it. The city council of Carondelet no where intimate that they take back their acceptance. On the contrary, they direct their agent to enter into a written agreement embracing the terms of Eads's proposition. They tell him to close the contract between said city and Eads. The ordinance embraces every element of a contract agreed on and in writing. The real expressed intention is that the writings, when drawn, after setting forth the terms of Eads's proposition, shall embrace also " such further conditions as may be deemed necessary." But it is not said that the absence of any named condition shall defeat the contract already made.

II. In order to constitute a binding contract, there must be a definite promise by the party charged, accepted by the person claiming the benefit of such promise. (Chitty on Cont. p. 9, 5th Am. ed.)

III. In contracts, justice should be done between the parties by enforcing a performance of their agreement according to the sense in which they mutually understood it at the time it was made. (Chitty on Cont. p. 73, 5th Am. ed.) In this case, the fact that Eads immediately complied with the agreement on his part not only manifested his understanding, but fixed on the city council the knowledge of the manner in which he received their acceptance of his proposition. As to construction of contracts of the above nature, see, generally, 11 Verm. 583 ; 10 Pick. 230 ; 14 Verm. 311 ; 19 Verm. 202 ; 6 B. Mon. 619 ; 3 Story, 122, 273 ; 2 Shepley, 233.

*Jecko & Clover*, for defendant in error.

I. A mere voluntary compliance with the conditions of the proposed contract by the plaintiff did not render the defendant liable on the contract. (Johnson v. Fessler, 7 Watts, 48 ; Ball v. Newton, 7 Cush. 599 ; Meynell v. Surtees, 31 E. Law & Eq. 475.)

II. The proposition for a contract set forth in the petition could only become a binding contract when met by an acceptance which corresponded with it entirely and adequately, leaving nothing further to be done to complete the contract. (Honeyman v. Marryatt, 6 H. L. Cas. 112 ; Hough v. Brown, 19 N. Y. ; 5

Eads v. City of Carondelet.

Smith's Ct. of App. 111 ; Taylor v. Rennie, 35 Barb., N. Y., 272 ; McColter v New York, 35 Barb., N. Y., 609 ; Underhill v. N. Am. Ins. Co., 36 Barb., N. Y., 354 ; Hutcheson v. Blakeman, 3 Met., Ky., 80 ; Crane v. Portland, 9 Mich. 493 ; Brown v. Rice, 29 Mo. 322.) Where one party proposes a certain bargain, and the other agrees, subject to some modification or condition, there is no mutuality of contract until there has been an express assent to it so modified ; otherwise it would not be obligatory on both parties, and would therefore be void. (Boyd v. Hind, L. T., N. S., Exch. 246.) By defendant's ordinance, the proposition of Mr. Eads was simply not accepted. The city contemplated a written agreement which was to embrace not only the proposition mentioned in the first section of the ordinance, but which, it is expressly declared, was to contain such further conditions as might be necessary, and to close the contract, as yet open and unclosed, between the city and Eads. (Barker v. Allan, 5 Hurl. & Norman Exch. 67 ; Jordan v. Norton, 4 Mees. & W. 155 ; Cooke v. Oxley, 3 Tenn. 653 ; Routledge v. Grant, 15 Eng. C. L. Rep. 99 ; Hutchison v. Bowler, 5 Mees. & W. 535 ; Ridgway v. Wharton, 6 H. L. Cas. 257 ; Fenno v. Weston, 31 Verm. 351 ; Andrews v. Garrett, 6 C. B., N. S., 262 ; Esmay v. Groton et al., 18 Ill. 487 ; Carr v. Duvall et al., 14 Pet. 81 ; Eliason v. Henshaw, 4 Wheat. 228.)

WAGNER, Judge, delivered the opinion of the court.

This case is brought before us on a writ of error, prosecuted from a decision of the court below, sustaining a demurrer to the plaintiff's petition. The plaintiff alleges in his petition that on the 23d day of May, 1862, he had entered into a contract with the government of the United States to build and construct six gunboats ; that in the construction of the boats a large number of persons would necessarily have to be employed, and a large quantity of money disbursed ; that defendant was anxious to have the boats built within its corporate limits ; and that one William Taussig, on behalf of the city council, representing the defendant, requested the plaintiff to submit to the said city council a proposition stating upon what terms he would build said boats

and establish his boat-yard in the said city of Carondelet, and thereupon the plaintiff did, on the said 23d day of May, 1862, make to the city council a proposition in writing, addressed to William Taussig.

The letter containing the proposition and the terms on which plaintiff would agree to build his boats and establish his boat-yard in Carondelet is set out at length in the petition. The proposition was to be open for the acceptance and approval of the city council until the next day at noon. The petition further alleges that on the 24th day of May, 1862, and before noon of that day, the city council of the city of Carondelet did pass an ordinance of said city, which was then and there duly approved by the mayor thereof, which is as follows:

"No. 381. An ordinance authorizing the mayor to enter into a contract with James B. Eads.

"*Be it ordained by the City Council of the city of Carondelet, as follows:*

"SECTION 1. That the proposition of James B. Eads, addressed to Dr. Wm. Taussig, bearing date 23d May, 1862, and submitted to the city council at a meeting held on said day, relative to the building within the city limits of the city of Carondelet of six iron gunboats, the erection of machine-shops, ways, and the construction of a boat-yard, to be a permanent establishment for five years from said date, is hereby accepted by said city.

"SEC 2. The mayor is hereby authorized and empowered to enter into a written agreement with said James B. Eads, embracing the terms of the proposition mentioned in the first section of this ordinance, and such further conditions as may be deemed necessary, and to close the contract between said city and said Eads; he is further authorized to employ counsel for the purpose of properly drafting the contract or agreement contemplated by said proposition and this ordinance.

"SEC. 3. This ordinance to take effect on and after its passage

"Approved May 24, 1862."

The petition avers that the ordinance was at once communicated to plaintiff, and that, trusting to the good faith of the corporation

in carrying out the agreement thus entered into between the defendant and himself in complying with its engagements, he at once proceeded to erect his buildings, put up the requisite machinery, and establish a boat-yard; that he has performed and fulfilled all the agreements and engagements on his part, but that the said defendant has failed to keep and perform its part of the contract, wherefore suit is brought.

The question here does not relate to the meaning or interpretation of the supposed contract, but is whether there was any contract made and entered into which was binding on the parties. There can be no valid contract unless the parties thereto assent, and they must assent to the same thing in the same sense. (1 Pars. on Cont. 475; 1 Sto. on Cont. § 378; Hazard v. New England Marine Ins. Co., 1 Sum. 218; Greene v. Bateman, 2 Woodb. & M. 359; Barlow v. Scott, 24 N. Y. 40.) In Honeyman v. Marryatt, 6 H. L. Cas. 112, a proposition to sell real estate was accepted, subject to the terms of a contract to be arranged between the parties, and it was held that there was no complete contract in the case. An absolute acceptance of a proposal, coupled with any qualification or condition, will not be regarded as a complete contract, because there at no time exists the requisite mutual assent to the same thing in the same sense. And when a parol agreement is assented to, which it is understood between the parties is to be put into writing, it is not binding till it is put in that form. If we were at liberty to construe the first section of the ordinance alone, and wholly disregard the other parts, we should find no difficulty in finding the existence of a valid contract. But this we cannot do; the whole ordinance must be taken together to ascertain with what intent it was framed, and what was necessary to be done to carry it into execution and impart to it validity and force. After accepting the proposition of Eads in the first section, the second section proceeds to provide the means for carrying out that acceptance, not merely or exclusively on the terms proposed, but on such further conditions as may be deemed necessary. The mayor is authorized and empowered to enter into a written agreement with Eads, embracing the items of the proposition mentioned in the first section of the

ordinance ; and, to superadd further conditions which may be deemed necessary for the purpose of properly drafting the contemplated agreement, he is authorized to employ counsel. A written agreement is expressly provided for and contemplated, with such conditions as the mayor, acting for and in behalf of the city, might deem advisable. The ordinance was at once communicated to Eads, and he saw the terms and conditions annexed to the acceptance of his proposition. If he intended to hold the city, it was his duty to have the terms agreed upon and the contract closed by writing.

Judgment affirmed. The other judges concur.