Miller, J.
1.Sales offer-delivery. I. The main facts of the case, as shown by the record, are: That about the 20th day of November, 1868, J. D. Holden, of Burlington, gave an order to the agent oi plaintiffs — merchants of the city of New York — for a bill of goods, which were shipped by plaintiffs to Holden at Burlington, November 25, 1868. On their arrival Holden refused to receive them, and wrote plaintiffs, December 1, 1868, as follows: “ I am not in the habit of allowing houses to fill my orders as they please. The goods will remain in the freight-house subject to your order.”
(The evidence showed that the terms of payment affixed to the invoice were different from those agreed upon between Holden and plaintiffs’ agent at the time the order was given, and that several of the most important articles ordered — those which induced the giving of the order — were not sent.)'
Upon receipt of Holden’s letter, the plaintiffs wrote him, December 4, recognizing the fact of non-compliance with his order, and offered to deduct ten per cent if he would take the goods shipped. To this Holden, on the 8th of the same month, replied, saying, “ that on account of ill health, I have this day sold out my stock of goods, so that I cannot use the goods,” etc. The goods remained in the freight-house of the Chicago, Burlington and Quincy railroad from the time they first arrived until attached by the sheriff, Latta, on or about February 5, 1869. When Holden refused to receive the goods, he gave notice of that fact to the railroad company. Soon after Holden sold out he left the State, as was supposed, and there is evidence tending to show that he died about January, 1869. In February, 1869, plaintiffs were informed by the Hudson River Railroad Company, that they had a case of goods at Burlington, Iowa, marked “ J. D. Holden, Burlington, Iowa.” ■
Plaintiffs wrote, February 10, 1869, to Metzger & Leib *437 stodter, merchants, at Burlington, offering to sell the goods to them, but they wrote, declining to purchase, February 13, 1869.
On the 11th of May following, plaintiffs wrote to R. M. Raab & Brothers, merchants, at Burlington, desiring them to reship the goods to them (plaintiffs). Raab & Brothers wrote them, on the 19th of May, that the goods had been attached while remaining stored in Burlington, in the warehouse of the railroad company. The record and proceedings before the justice show that no personal service of notice was had on Holden, that the ground for the attachment was that he had absconded, and notice was served by publication, judgment rendered, goods sold on execution and money paid over to Edwards & Beardsley before plaintiffs were informed of the attachment proceedings. No demand was made of the defendants previous to the commencement of this action.
Upon the foregoing facts there was a verdict and judgment for the plaintiffs, and the appellant assigns various errors, viz.:
1. “ There was no sufficient evidence to justify the verdict.”
Whether the verdict is sustained by the evidence or not depends upon the ownership of the .property at the time it was attached. If, as contended for by appellant, the goods were the property of Holden, then there could be no legal recovery -by the plaintiff, and the verdict should have been set aside.
Generally, the delivery of goods purchased, to a carrier, when they are to be sent by a carrier, is equivalent to a delivery to the purchaser, and the property and risk immediately vests in the purchaser, subject to the vendor’s right' of stoppage in trcMisitu. The effect of a delivery by the consignor to a common carrier is to vest the property in the consignee. Such delivery to the carrier is held to be a constructive delivery to the consignee. 2 Kent’s Com. *438 499. It must be borne in mind, however, that the title thus vests in the consignee by delivery to a carrier of goods purchased by the consignee. It is not in the power of a consignor to vest the property and risk in another, to goods not purchased by such other person. It is only where goods are purchased, and the goods thus purchased are consigned, that the delivery to a earner, for the consignee, passes the property in the goods to the consignee. Such delivery completes the purchase and sale of the goods, subject, of course, to the right of stoppage vn transitu.
Was there a purchase of the goods by Holden, so that their delivery- to the common carrier vested the title in him?
In every contract of sale of goods, three things are necessary to its validity, viz.: the thing sold, which is the object of the contract, the price and terms, and the consent or assent of the contracting parties. 2 Kent’s Com. 468.
There can be no contract unless the parties thereto assent ; and they must assent to the same thing in the same sense. 1 Pars. Oont. (5th ed.) 475.
The evidence, as we have seen, shows that the goods sent were not such as were ordered by Holden, and that the terms of payment accompanying the invoice were materially different from those agreed upon between him and plaintiff’s agent. Holden did not assent to purchase the goods sent. They were not such as he had ordered. He never agreed to the terms of payment imposed by the plaintiffs. There was, therefore, no sale of the goods by them to him. Had the plaintiffs shipped the goods ordered by Holden, and on terms of payment as agreed to between him and their agent, then a delivery by plaintiffs to the carrier would have been a constructive delivery to Holden, and the title would have thereupon vested- in him, but not so when they shipped to him different goods from those he offered to buy, and on terms of payment different from those proposed. And that part of the goods sent correspond with *439 part of those ordered, does not change the result when the articles which induced Holden to give the order were not sent, and especially so when the goods were consigned to him on terms other than those agreed on with the agent of the plaintiffs. They could not have maintained an action against Holden for the price of the goods.
The purchase was never complete. Holden refused to assent to it on plaintiff’s terms; they were not the terms he had agreed to. He immediately, on the arrival of the invoice of the goods, notified the vendors of his refusal to accept; they acquiesced, and offered to sell on other terms, which he declined, whereupon they proposed to sell to other parties, and finally ordered the goods reshipped to them.
Holden never had any property in the goods, nor were they, at any time, in his constructive, much less actual, possession.
3._stoppage m transitu. The appellant argues that the delivery of the goods to the carrier was a delivery to the consignee, Holden, and plaintiffs could protect their rights in the property, against the creditors of Holden, only by a deed, duly acknowledged and recorded, under section 2201 of the Revision. We have seen that Holden did not purchase the goods, and, therefore, their consignment to him was not even a constructive delivery; but were it otherwise, he never had actual possession, and the statute referred to applies only where actual possession is retained by the vendor of personal property. Thomas v. Hillhouse, 17 Iowa, 67, 70.
The arrival of the goods at the place of their destination and their storage there in the freight-house of the railroad company was not an actual delivery to the consignee, even if there had been a valid sale of the goods to him. In such case the delivery to the carrier by the vendor is only a constructive delivery to the vendee, and it remains constructive only while the goods are in transitu, that is so long as *440 they are in the custody of the carrier. Cox v. Burns & Rentgen, 1 Iowa, 64; O'Neil v. Garrett, 6 id. 480.
The foregoing views dispose of the questions made by appellants on the giving and refusal of instructions, and render a separate notice of those questions unnecessary.
II. The last error assigned is, that “ the court erred in allowing .the exhibits which were a part of the depositions to be detached and taken by the jury to their room.”
There is nothing in the record showing what exhibits or p.apers were allowed to go to the jury, nor under what circumstances, nor that any were so allowed. Nor does the record show that any objections were made or exceptions taken, and the objection cannot be now made in this court for the first time.
Finding no error in the record, the judgment of the court below is
Affirmed.