FALLS WIRE MANUFACTURING COMPANY, Respondent, *v.* JOHN J. BRODERICK ET AL., Appellants.

#### June 20, 1883.

1. There can be no contract unless the parties each have the same understanding as to the terms thereof.

2. An acceptance of a proposition coupled with a qualification or condition is not such an acceptance as will bind the other party.

3. The interpretation of a contract made by letters and the question as to whether there had been an acceptance, are wholly for the court.

APPEAL from the St. Louis Circuit Court, ADAMS, J.
*Affirmed.*

NOBLE & ORRICK, for the appellants.

GEORGE P. STRONG, with LOUIS R. TATUM, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

This was an action for goods sold and delivered by plaintiff to defendants.   Defendants, after a general denial, set up a counter-claim growing out of an alleged breach of contract on the part of plaintiff.   Plaintiff in its reply denied the contract, and pleaded the statute of frauds.   On the trial it was admitted that the sum of $303.66 was due on plaintiff's cause of action ; and the court instructed the jury to find for plaintiff on the counter-claim.   There was a verdict and judgment accordingly.

The only question presented for our consideration is, whether the trial court correctly declared as a matter of law

that the evidence introduced by defendant was insufficient to establish the contract.

Plaintiff was a corporation engaged in the manufacture of wire at Cuyahoga Falls, Ohio. Defendants were a firm dealing in wire, at St. Louis, Missouri.

On December 23, 1879, defendants wrote to plaintiff, saying that they would need one hundred and fifty to two hundred and fifty tons best charcoal wire, and asking the lowest prices, and also the lowest prices for best Siemens Martin wire that will harden.

On December 26th, plaintiff answers, explaining the different qualities of the wire, and asking a sample, and the particular description of the wire wanted.

On December 29th, defendants write, sending samples, asking quotations of both bright and annealed wire.

On January 5, 1880, plaintiff acknowledges the last letter with samples and request for quotations, and says : " Our present price for open hearth steel wire is : Nos. 13 to 18 inclusive, fifty per cent from list enclosed ; Nos. 18 to 36 inclusive, fifty-five per cent from list enclosed ; delivered at St. Louis, cash thirty days. We will not agree to bind ourselves to these prices for any definite length of time (over, say, thirty days) until the iron market becomes more settled. If, at the expiration of thirty days, there has been no change in the price of iron, the price of wire to remain the same till a change in the price of iron occurs. If the prices and terms meet your views, we would be pleased to send you a few sample bundles of, say, five or six different sizes, to be designated by you. If samples prove satisfactory, we could then run out a quantity for you."

Enclosed in this letter was a price list of the Falls Wire Manufacturing Company's bright annealed or market wire. The date, January 5, 1880, and the figures " 50," " 50," and " 55 " on the top of each column in the list, and the dots for " ditto " under these figures, are admitted to have

been written on the printed list by plaintiff before it was sent.

| NO. | PRICE PER LB. | DISC. | NO. | PRICE. | DISC. | NO. | PRICE. | DISC. |
|---|---|---|---|---|---|---|---|---|
| 0 & 1 | 9 | 50 | 13 | $12^{1}/_{2}$ | 50 | 25 | 25 | 55 |
| 2 | 9 | " | 14 | $12^{1}/_{2}$ | " | 26 | 26 | " |
| 3 | 9 | " | 15 | 14 | " | 27 | 28 | " |
| 4 | 9 | " | 16 | 14 | " | 28 | 29 | " |
| 5 | 9 | " | 17 | 15 | " | 29 | 30 | " |
| 6 | 9 | " | 18 | 16 | " | 30 | 32 | " |
| 7 | 10 | " | 19 | 19 | 55 | 31 | 33 | " |
| 8 | 10 | " | 20 | 20 | " | 32 | 35 | " |
| 9 | 10 | " | 21 | 21 | " | 33 | 37 | " |
| 10 | 11 | " | 22 | 22 | " | 34 | 40 | " |
| 11 | 11 | " | 23 | 23 | " | 35 | 45 | " |
| 12 | $11^{1}/_{2}$ | " | 24 | 24 | " | 36 | 55 | " |

On the 8th of January, defendants write as follows : —

" Please ship us : One ton No. 16 best Siemens Martin steel wire, same quality and kind as sample ; one-half ton No. 14 same ; one ton No. 15 same ; two tons No. $17\frac{1}{2}$ same ; one-half ton No. 19 same ; and one car-load No. 12 steel wire, and all at prices as quoted on 5th inst. We are very desirous of having only the best wire for ropes, as explained in our former letter, and you will oblige us by forwarding samples per express, and, if your wire suits, will want about the quantity stated previously."

On the same day they send another order for two tons No. $16\frac{1}{2}$.

On the 10th of January, plaintiff writes as follows : —

" We have your two favors of the 8th, ordering car-load No. 12 and small lots of other sizes. We will have to

make this wire for you from the rods, which will take some little time. We will send you the 16½ first, say about next Thursday, the balance to follow very soon after. We cannot deliver less than car-load lots in St. Louis. You will have to pay the excess over twenty-five cents per hundred on small lots.''

It is contended by defendants and denied by plaintiff, that the foregoing letters show a contract for No. 12 wire.

The following letters were then introduced by plaintiff and objected to as irrelevant by defendants.

January 14, 1880, from plaintiff to defendants : —

'' When we wrote you on the 10th, we supposed our quotation of the 5th included No. 12 wire, but when we got ready to commence on your order we found that this size was not included ; our quotations was for No. 13 to 26 included. We are now at work on the 16½ and will ship the balance of order in a short time, excepting the No. 12, which we must decline to fill at list quoted for 13 to 19.''

January 16th, from defendants to plaintiff : —

'' Yours of 14th to hand and noted. We use all sizes wire, from 9 to 26, but our greatest demand is for 13 to 26, and hence wrote you principally for quotations on these sizes. In your letter of prices 5th inst., Nos. 13 to 26 are specially quoted, but you also mailed us a price list with quotations from Nos. 9 to 26, and on account of these prices we gave you the entire order, which we expect you to ship.''

The last letter is dated January 21, 1880, and is from plaintiff to defendants, in reply : —

'' Referring to your letter of the 16th in relation to the No. 12 wire, let me say that I had no intention of accepting any other order than for sizes quoted you in my letter for 5th ; we were not then, nor are we now, open for orders for this size, as we have sold several months ahead to the

R. W. Barb Fence Company of Cleveland. The price list you spoke of was an old one dated for the occasion, and sent you to show list price of sizes quoted you in letter enclosing it. In short, we decline to sell any No. 12 wire at any price."

If there was any bargain in this case, it was wholly in writing, and is altogether before us in the letters we have set out. The triers of the fact have nothing to do with the secret intention of the parties. The question is, was there a contract to buy and sell No. 12 wire by a reasonable construction of the words and acts of the parties as manifested by this correspondence? If there was not, the court committed no error in taking this issue from the jury.

Was there an offer to sell No. 12 wire in the letter of the 5th of January with the enclosed price list? It is not pretended that there was any offer to sell such wire in any previous letter.

We think that there was no offer to sell No. 12 wire in this letter. No inquiry had been made for No. 12 wire. The only numbers spoken of in the letter of plaintiff are 13 to 18 and 18 to 36. The price list is sent. It is nowhere expressly said that this was a printed list; but from the admission that the dates and the discounts and dots were written by plaintiff, it is to be taken that the other words and figures were not written by it, and that this was a printed or lithographed circular in tabular form. The fact that dots were put from top to bottom indicating the discount at fifty or fifty-five per cent for each grade of wire, does not, we think, tend to show that the sending of this circular in a letter which expressly offers for sale certain grades of wire indicated by numbers in the circular, was an offer to sell other grades of wire also set out in the price list. If the plaintiff, without any previous or accompanying correspondence, had sent a circular with prices as a proposition to sell at the prices named in the circular, it might be taken that all the grades in the circular were

offered at the prices named ; but in this case the letter accompanying the circular limits the statement and expressly shows that it is sent for the purpose of showing the prices and discounts for cash on certain grades of wire named in the letter accompanying the circular.

On the 8th, defendants order various quantities of various grades of wire, and close with one car-load of No. 12. In answer to this plaintiff writes that it has received the order for the small lots and for a car-load of No. 12 ; that it will have to make the wire, which will take some time, and that it cannot send the wire in small lots, and therefore defendants must wait for their wire until an entire car-load is made. This letter is written on the 10th, and on the 14th, and before any answer is mailed by defendants, plaintiff writes again, saying that its letter of the 10th was written under a mistake ; that it supposed when the letter was written that it had offered No. 12 wire to defendants in its letter of the 5th, but found afterwards, as it was preparing to begin on the order, that this size was not included in its offer of the 5th.

We are unable to find in this correspondence any meeting of minds, any unconditional offer, accepted as made, for No. 12 wire. There can be no valid contract unless the parties thereto assent to the same thing in the same sense. An absolute acceptance of a proposal coupled with any qualification or condition, is not to be regarded as a complete contract. *Eads* v. *Carondelet*, 42 Mo. 117.

The first offer came from St. Louis in the letter of the 8th of January. It contained an order for four tons, which was less than a car-load, of four different qualities of wire, and also an order for one car-load of No. 12 wire, at prices named. If plaintiff in Ohio had accepted this proposition, precisely as made, there would have been a meeting of minds and a binding contract. But plaintiff does not accept the proposition without adding certain conditions. The No. 12 wire is not on hand ; it must be made

from the rods; and defendants must wait for the No. 12 wire until a whole car-load is manufactured, for plaintiff cannot deliver less than car-load lots. It informs its correspondent that it will take some little time to make the wire. We have no doubt that defendants might have written back that they would not take the No. 12 wire on these conditions; that they would not wait an indefinite time until it was all made. But, if defendants were not bound until they had accepted the modifications suggested by plaintiff, then plaintiff was not bound. If defendants had posted an unconditional letter of acceptance in answer to plaintiff's letter of 10th, then both parties would have been bound, and the bargain made. But this they did not do; and, before they wrote again, plaintiff wrote retracting its offer.

A proposal does not, of course, constitute a bargain. If an offer is accepted it must be accepted unconditionally. A conditional acceptance is a new offer, which, in its turn, requires acceptance to close the bargain. A slight change makes a new proposition. An offer to buy a horse, " if warranted sound, and quiet in harness," is not accepted by sending the animal with warranty that he " is sound, and quiet in double harness." *Jordon v. Norton*, 4 Mee. & W. 155. We have found no case, of course, precisely like the one at bar. About the general principles there can be no dispute. The real question is, after all, whether or not the letter of January 10th, from Ohio, was a modification of the offer of January 8th, from St. Louis. The case is a very close one; and we have had doubt. But, after giving to the matter such attention and discussion as we have been able to give to it, it is our best judgment that the proposition from St. Louis was not accepted as made; that the modification proposed was material. This is decisive of the controversy, because there can be no question that the letter of retraction was mailed and received before any step was taken to accept the modified and new offer from Ohio.

The interpretation of the contract, and whether there had been an acceptance, was entirely for the court. There was no question of the use of technical words which the jury might understand and the court might not. *Hutchison* v. *Bowker*, 5 Mee. & W. 534. And, in this case, we may say, as Lord Abinger said in the case just cited, that we are quite satisfied that, had the action been the other way, and the parties seeking to enforce the counter-claim had found it inconvenient to take the No. 12 wire, they would not have been slow to argue that there was no contract, that they were not bound to wait until a car-load of wire was made, and that they had a perfect right to refuse to take the No. 12 when they were informed of the conditions on which alone they could have it. They would then have said, as we say, that the parties never contracted in writing *ad idem*. That the parties offering a modification of the proposition from the other side for acceptance may retract before there has been an acceptance, there can be no question. The proposer may withdraw his offer so long as it is not accepted, for if there be no contract till acceptance, there is nothing by which the proposer can be bound. Benj. on Sales, 41.

Appellants suggest that the letter of the 14th is an admission by plaintiff that it had made a contract to sell the No. 12 wire to defendants. That is not clear. Plaintiff might suppose from the answer of defendants, forgetting what had been written on its behalf, that it had offered No. 12 wire, seeing that defendants ordered it; and on reflection and examination discover its mistake. It might get ready to fill an order without any absolute certainty that it would come to terms with the party from whom it expected it; nor because it was getting ready to fill a general order for different grades of wire, does it necessarily follow that it was getting ready to manufacture No. 12 wire, though that constituted the largest part of the order.

We think that the learned judge committed no error in excluding the letters offered to show a contract from the consideration of the jury. The judgment is affirmed. All the judges concur.