ANTONIO CANGAS, Respondent, v. L. M. RUMSEY MANU-
FACTURING COMPANY, Appellant.

St. Louis Court of Appeals, June 4, 1889.

1. **Contract.** To constitute a contract, a proposal must within a reasonable time be accepted as made: the acceptance must comprehend the entire proposal without qualification of its terms or subject-matter.

2. ——. A mere intention to accept the proposal, not communicated to the person making the proposal, is not equivalent to an acceptance, and will not bind the contract.

*Appeal from the St. Louis City Circuit Court.*—HON.
SHEPARD BARCLAY, Judge.

REVERSED, ( *with judgment for appellant.* )

*Lee & Ellis,* for the appellant.

(1) The evidence in this case does not establish any contract between the parties to this suit. The mere proposal or order by one party to another, which is not accepted, constitutes no bargain between them. If the offer by a vendor be answered by a proposal to give a less sum, this amounts to a rejection of the offer, which is then at an end, and the party to whom the offer was made cannot afterwards bind the intended vendor by simply accepting the first offer. Benj. Sales [ Bennett's Ed. ] sec. 39, and cases cited; *Baker v. Johnson Co.,* 37 Iowa, 186; *Alsberg, Jourdan & Co. v. Latta,* 30 Iowa, 442; *Hyde v. Wrench,* 3 Beav. 336; 1 Pars. Cont. [ 7 Ed. ] bot. p. 507; *Jenness v. Iron Co.,* 53 Me. 20; *Burmester v. Phillips,* 25 Fed. Rep. 805; *Snow v. Miles,* 3 Cliff. 608; *Brown v. Rice,* 29 Mo. 322; *Stitt v. Huidekoper,* 17 Wall. 384; *Schenectady Co. v. Holbrook,* 101 N. Y. 45. (2) The only authority conferred upon appellant, under the

correspondence read in evidence, was that of an agent for the purchase of the machines in controversy.

*W. B. Homer*, for the respondent.

(1)  The evidence in the case establishes a contract between the parties to the suit. 1 Pars. Cont. [ 7 Ed. ] star p. 483; *Stotesberg v. Massengale*, 13 Mo. App. 221; *Bruner v. Wheaton*, 46 Mo. 367; *Mfg. Co. v. Broderick*, 12 Mo. App. 378.  (2) The contract in question was a contract of sale and purchase, and not that of principal and agent.

BIGGS, J., delivered the opinion of the court.

The plaintiff sues the defendant for non-delivery of twenty D. M. Osborne, No. 8 reaping machines, and claims four thousand dollars damages.

The plaintiff is a merchant and citizen of the republic of Mexico, and the defendant is a business corporation engaged in the hardware business in the city of St. Louis.

The petition contains two counts but they relate to the same subject-matter.

The plaintiff in substance alleges that the defendant for a consideration contracted to deliver to him twenty D. M. Osborne, No. 8 reaping machines, for which he had agreed to pay the sum of sixteen hundred and twenty dollars; that the machines were to be delivered to the transportation company at St. Louis on or before the twenty-eighth day of February 1886; that it was understood at the time when the contract was made that the plaintiff had sold the machines to other parties in Mexico, and that they were to be shipped in time to reach him for the harvest of 1886; that, on the twenty-eighth day of February, the plaintiff paid to the defendant, on account of this purchase, the sum of two thousand dollars; and that on the fifth day of March the defendant informed the plaintiff that it could not

perform the contract because the factory, manufacturing the machines, refused to deliver them to defendant. Then follow allegations of sales of machines by plaintiff to parties in Mexico, and that the plaintiff was unable to procure elsewhere the machines to fulfill his said contracts.

The defendant by its answer denied all the averments in the petition, and then in substance alleged that it had been acting merely as an agent for the plaintiff in the purchase of the machines; that it did not manufacture or sell the reapers and could only buy them from the manufacturer, all of which was known to the plaintiff; that the machines were manufactured by D. M. Osborne & Co., of the state of New York, and that Osborne & Co. had agreed with the defendant as the plaintiff's agent to furnish the machines, but afterwards refused to do so, for the reason that they had agreed with one of their agents not to sell machines within the territory of the republic of Mexico.

Upon the issues thus framed, the parties proceeded to a trial. The cause was submitted to the court sitting as a jury, and resulted in a judgment for the plaintiff in the sum of $2187. From this judgment the defendant has prosecuted this appeal and has assigned many reasons why the judgment cannot be upheld.

The first error complained of is the action of the trial court in holding that the evidence was sufficient to establish a contract between the plaintiff and the defendant for the delivery of the machines. The defendant asked the court to instruct to the contrary, which was refused, and the defendant saved its exception to the ruling of the court. This assignment challenges the plaintiff's right to maintain this action, and, as it lies at the threshold of the case, we will first consider it. If the defendant is right, then the consideration of the other questions arising on the record will necessarily be dispensed with. In our discussion, we will assume, for the purpose of the argument,

that in the alleged purchase of the machines the defendant was not acting as the agent of the plaintiff.

As we read the record, there seems to be no claim or pretense that any part of the alleged contract rested in parol, but the contract (if any was made) was evidenced by letters written by the plaintiff and the defendant to each other.

It appears that in October, 1885, the plaintiff visited the city of St. Louis and made some purchases from the defendant in its line of business; that in November, 1885, the plaintiff, after his return home, wrote to the defendant that he was informed that a machine made by D. M. Osborne & Co., of New York, was sold in St. Louis; that he asked the defendant to inform him of the cash price of those catalogued as Nos. six and eight; that the defendant replied that the price of the No. 8 Osborne reaping machine was eighty-one dollars delivered on the cars in the city of St. Louis; that the result of this correspondence was the shipment by the defendant to the plaintiff of two No. 8 machines at eighty-one dollars each.

It also appears from the correspondence, and from other evidence, that Osborne made a different machine for the Mexican trade, and that the plaintiff was advised by the defendant, that these machines could *only* be obtained from the factory in the state of New York.

This statement of the prior transactions between the parties is necessary to a full understanding and explanation of the subsequent correspondence, out of which this litigation has arisen.

After the first purchase, the plaintiff, with a view of further importations of machines, addressed the following letter to the defendant:

"IRAPUATO, December 30, 1885.
"*L. M. Rumsey Manufacturing Co., St. Louis, Mo.*

"GENTLEMEN:—Your favor of the eighteenth inst. came duly to hand and contents noted. I wish to import into this country several reaping machines and

would like to know the price of Osborne's light steel frames No. 11, and also the light reaper and binder of the same factory. I desire to do this transaction as an agent to speculate on it, and I would like to get your quick answer so as to remit the order and necessary funds if satisfactory, but in all this there must be no delay. I see by the newspapers that railroad freights have been greatly reduced, which will be very favorable for my undertaking. Trusting you will act as my agents in this matter, I remain,

"Very truly,
"ANTONIO CANGAS"

This letter was not answered by defendant.

On the tenth day of January, 1886, the plaintiff again wrote to the defendant, as follows:

"IRAPUATO, January 10, 1886.
"L. M. Rumsey Manufacturing Co., St. Louis, Mo.

"GENTLEMEN:—I wish to import here twenty D. M. Osborne & Co., of New York, No. 8 reapers, and also ten William Deering reapers, as shown in third page of your catalogue and called "Deering Light Reaper." In order to make a success of this importation it is absolutely necessary that they be shipped for this country on or before the twenty-fifth day of February of this year, for it will not be advantageous to make said importation after said date. It is therefore the object of this letter to ask you if you can remit said thirty machines by the date above named, and if you can do so, to have them ready and advise me of same immediately, so as to remit the necessary funds, but I repeat that the transaction would not be suitable unless it can be done by the date already mentioned. I have not heard from those already ordered but suppose they are on the way already. I write to-day to H. G. Gonzales sending him copy of this letter, so taht he may translate exactly to you its contents. I remain,

"Very truly,
"ANTONIO CANGAS."

On the twenty-first day of January, the defendant wrote to the plaintiff, and that portion of the letter, which is in answer to the plaintiff's letter of January 10, is as follows:

"St. Louis, January 21, 1886.
"*Mr. Antonio Cangas, Irapuato, Mexico.*

"Dear Sir:—We received your letter of the tenth in regard to the thirty machines and fully understand it. We also understand the letter written to Mr. Gonzales about the machines. We would state that we cannot furnish you the Deering machines, but can furnish you the twenty No. 8 Osborne machines, and can ship them from the U. S. before the twentieth of February. This is what the factory informs us. We may be able to ship these machines as a car load and thus obtain lower rate of freight. We will furnish you a No. 11 light steel frame Osborne Harvester and Binder for one hundred and forty-nine dollars. We shall be highly pleased to receive your order for the twenty machines, and shall use our best endeavors to ship them promptly.

"Yours very truly,
"L. M. Rumsey Mfg. Co."

On the twenty-third of January, 1886, the defendant again wrote to the plaintiff, as follows:

"St. Louis, January 23, 1886.
"*Mr. Antonio Cangas, Irapuato, Mexico.*

"Dear Sir:—Since writing to you two days ago in regard to the reaping machines we would state that we have made arrangements with Deering & Co., and will be able to furnish you ten of their reaping machines for eighty-five dollars each, which will be the price at the factory. In case you order, we will use every effort to get low freight and will ship as promptly as possible. Trusting you may favor us with your order, we remain,

"Very truly yours,
"L. M. Rumsey Mfg. Co."

On the twenty-ninth day of January, 1886, the plaintiff wrote to the defendant, as follows :

"IRAPUATO, January 29, 1886.

"*L. M. Rumsey Mfg. Co., St. Louis, Mo.*

"GENTLEMEN :—I am favored by yours of the twenty-first inst. and see by it that the machines I bought of you are on the way and will be here soon.. Also I notice that the freight amounts to $71.95 instead of thirty-two dollars, as you stated in one of your letters. I believe that must have been a mistake as I really thought the freight too low at said figure. I owe you, therefore, a balance of $35.20 which I will soon remit to you.

"Circumstances have changed considerably from what I had proposed, not only on account of double freight, but also on account of the falling in price of the Mexican money in the markets of the U. S., and I am somewhat thwarted thereby in regard to importing the reapers. However, I may conclude to make the experiment if you can give me a discount of at least ten per cent. on their total value. Under this agreement you may give the order to the factory to be getting them ready at once, giving me notice so as to remit to you at once their value either in Mexican coin or by New York draft. All this based on the point already mentioned of their being shipped on the twentieth of February.

"Awaiting your answer, I remain,

"Yours, etc.,

"ANTONIO CANGAS."

On February 5, 1886, the defendant, in reply to the letter of January 29, wrote to the plaintiff as follows ·

"ST. LOUIS, February 5, 1886

"*Mr. Antonio Cangas, Irapuato, Mexico.*

"DEAR SIR:—We are just in receipt of your esteemed favor of the twenty-ninth of January and carefully note contents of same. In our first letter to you

in regard to the freight on the reaping machine the factory said the weight of each machine was one thousand pounds and that the rate of freight being $3.20 per hundred pounds would make the freight on each machine thirty-two dollars.

"We wrote to you the weight of one machine instead of two, that was the mistake we made. When we came to ship the machines we found they weighed a little over a thousand pounds each, but the rate of freight was the same exactly $3.20 per hundred pounds. You say that we may ship the reaping machines if we will discount the price ten per cent. This we could not do as we have made you very lowest prices, just leaving us a small margin. Besides we had a good deal of trouble to get the factories to allow us to ship them.

"We would be pleased to ship them, but could not do so at a discount of ten per cent. from the prices we made you.

"We remain with much respect,

"Yours very truly,

"L. M. RUMSEY MFG. CO."

On the fourteenth day of February, the plaintiff again wrote to the defendant, as follows:

"IRAPUATO, February 14, 1886.

"L. M. Rumsey Mfg. Co., St. Louis, Mo.

"GENTLEMEN:—Yours of the fifth just to hand this day. I learn by it that you cannot allow the discount of ten per cent. on the twenty Osborne machines which I ask of you. However, I have decided to try this speculation, and I have this day written to my correspondent in the city of Mexico, instructing him to remit draft at suitable rate of exchange on some city in the U. S., or to ship direct to you Mexican silver to sell it and pay for the machines.

"In view of what I have written you before, I earnestly request of you to order the factory to hasten their shipping arrangements, so that as soon as you

receive their value, which I will remit next week at latest, they ship them. The five Deering machines I do not want. I owe you $35.20, which I will include in the remittance above stated. I remain,

" Very truly,
" ANTONIO CANGAS.

The defendant made no reply to this letter.

On the fifth day of March, the defendant sent to the plaintiff the following telegram, to-wit:

" Factory refuses to furnish machines, money here subject to your order; see letter. .

The letter referred to in the telegram is as follows:

"ST. LOUIS, March 5, 1886.
" *Mr. Antonio Cangas, Irapuato, Mexico.*

" DEAR SIR :—We just telegraphed you to-day that the factory refused to furnish us the twenty No. 8 Reaping Machines, and that your money was here subject to your order. We can assure you that we regret exceedingly our inability to get these machines for you.

" When you first requested a price of them we wrote the factory and received a letter from them dated, January 19, stating they could furnish us the machines and could ship promptly; but after your order came in, they refused to let us have them, as the trade for Mexico is controlled by some other agent. We used every possible endeavor to secure them, had the manager come down to our office and had him telegraph and write the factory several times. We received a letter this morning from D. M. Osborne & Co., stating that they will be unable to ship the machines; this of course settles the matter. We have the two thousand dollars Mexican silver, which you sent us. Please advise us what disposition to make of the money. We are very sorry to disappoint you in this matter, but the circumstances were such that we could not possibly make the shipment. Yours very truly,

" L. M. RUMSEY MFG. Co."

After the date of the letter of February 14, the plaintiff wrote the defendant, as follows:

"IRAPUATO, February 17, 1886.
"L. M. Rumsey Mfg. Co., St. Louis, Mo.

"GENTLEMEN :—Referring to my letter of the fourteenth inst., I enclose Wells, Fargo & Co.'s express order for one thousand Mexican dollars to be sold. Next week I will remit you the balance of the price of machines ordered from you.

"I remain, very truly,
"ANTONIO CANGAS."

"IRAPUATO, February 19, 1886.
"L. M. Rumsey Mfg. Co., St. Louis, Mo.

"GENTLEMEN :—Referring to my letter of the seventeenth inst., I enclose Wells, Fargo & Co.'s express order for one thousand Mexican dollars to be added to the former one thousand and sold, and the proceeds to be applied to the paying for twenty machines I have ordered. The freight on these machines must be paid here, and, as I understand, it must be paid in American money.

"I request of you very earnestly to see that they write on the margin B. L. the exact rate of exchange on Mexican money. This is a very important requisite. According to my letter of the fourteenth I expect the machines will soon be ready for shipment, and I beg of you that it be done with the utmost possible speed, because all delay in shipping beyond the tenth of March will be extremely injurious to me, and perhaps I will not be able to sell them this year. I therefore rely upon your reliability and earnestness for their shipment.

"Very truly yours,
"ANTONIO CANGAS."

There was other correspondence after March 5, but we do not deem its subject-matter material to the determination of the legal question arising out of the foregoing letters.

The law in respect to contracts entered into by letter or telegraphic correspondence is well understood and settled both by the state and federal courts. There is a remarkable unanimity in all of the authorities as to the necessary elements of such contracts, *i. e.*, what is necessary to be done by the contracting parties, before it can be said that a legal contract has been entered into.

If one person by letter proposes to bind himself by contract and states the subject-matter and terms of the contract, the party, to whom the proposition is made, must, within a *reasonable time* after the receipt of the letter, *accept* the proposition *as made*. The acceptance must *comprehend* the entire proposition and must not qualify its terms or subject-matter. If the acceptance in any material way differs from the original proposition, it amounts to a *rejection of the offer*. *Alsberg v. Latta*, 30 Ia. 442; 1 Parson on Contracts [5 Ed.] 475; *Baker v. Johnson Co.*, 37 Ia. 186; Benjamin on Sales [Benn. Ed.] p. 43; 1 Pars. Con. [7 Ed.] bot. p. 507; *Snow v. Miles*, 3 Cliff. 608; *Hyde v. Wrench*, 3 Beav. 336; *Burmester v. Phillips*, 25 Fed. Rep. 805; 1 Addison on Contracts, star pp. 17, 18; *Schenectady Stove Co. v. Holbrook*, 101 N. Y. 45. The adjudicated cases in this state are in harmony with the foregoing authorities, and they announce but one doctrine.

In *Falls Wire Co. v. Broderick*, 12 Mo. App. 383, Judge BAKEWELL said: "There can be no valid contract unless the parties thereto assent to the same thing in the same sense. An absolute acceptance of a proposal coupled with any qualification or condition is not to be regarded as a complete contract." The same law is declared by Judge WAGNER in *Eads v. City of Carondelet*, 42 Mo. 113.

In *Brunner v. Wheaton*, 46 Mo. 363, the court says: "In order that an acceptance may be operative, it must be unequivocal, unconditional and without variance of any sort between it and the proposal, and it must be

*communicated* to the other party without *unreasonable delay.*'' To the same effect is *Stotesberg v. Massengale*, 13 Mo. App. 221.

When we come to apply this law to the correspondence between the plaintiff and the defendant, it is very evident that the plaintiff's letter of January 29 was *not* an acceptance, but a *rejection* of the defendant's offer contained in his letter of January 21. The defendant in this letter offered to furnish twenty No. 8 Osborne machines but stated that he could not furnish the "Deering Machines," as requested by plaintiff in his letter of January 10. There was no price fixed on the Osborne machines in the letter of January 21 because that had already been ascertained by the parties, in the previous purchase, to-wit: Eighty-one dollars delivered on cars in St. Louis.

The plaintiff, in his letter of January 29, wrote to the defendant that he could not accept his offer, unless *ten per cent. was deducted from the price.* He gave as reasons for this the depreciation of the value of Mexican silver in the markets of the United States and the high freight rates. We do not understand that counsel for the plaintiff contends that this was not an absolute and unqualified rejection of the defendant's offer. But he urges that the defendant, in its reply of February 5, renewed the original offer, and that this last offer was promptly accepted by the plaintiff in his letter of February 14. The portion of the defendant's letter under date, February 5, which plaintiff says was tantamount to a renewal of the first offer, is as follows: "You say that we may ship the reaping machines if we will discount the price ten per cent. This we could not do, as we made you very lowest prices, just leaving us a small margin. Besides we had a good deal of trouble to get the factories to allow us to ship them. We would be pleased to ship them, but could not do so at a discount of ten per cent. from the prices we made you." The language employed does not of itself amount to a

new offer, nor can we say that the defendant intended to leave his first offer open for future acceptance. It is evident that the plaintiff understood it either in the one way or the other, but the question is, did he have reasonable grounds to place any such construction or meaning on the defendant's language?

In determining what the defendant really meant, it will be necessary and quite proper to look at the circumstances and conditions attending the negotiations between the parties. The plaintiff, in his letter of January 10, wrote: "*In order to make a success of this importation, it is absolutely necessary that they be shipped for this country on or before the twenty-fifth day of February of this year, for it will not be advantageous to make said importation after said date.*" The plaintiff, also, in his letter of the twenty-ninth, in which he authorized the defendant to ship the machines, provided a discount of ten per cent. was allowed, wrote: "*All this based on the point already mentioned of their being shipped on the twentieth of February.*"

The defendant received this last letter on the fifth, and answered it on the same day. It is unreasonable to suppose, as contended by the plaintiff, that the defendant intended by this answer to renew its first proposition, because it certainly understood that it was a matter of vital importance to the plaintiff that the machines should be shipped from St. Louis by the twentieth of February. It could not expect a reply to this letter of the fifth before the twentieth or twenty-first of February, which would have made it impossible for it to ship the machines within the time stipulated. It must also be borne in mind that the defendant could not buy the Mexican machines in the St. Louis market, but would have to order them from the factory in New York. It is more reasonable to conclude (and the language of the defendant's letter justifies the conclusion)

that the defendant considered its negotiations with plaintiff at an end.

Under this view of the case, we will have to treat the plaintiff's letter to the defendant under date, February 14, as containing a new proposition or offer. In order to bind the defendant by this last offer, it devolved on the plaintiff to show an acceptance by defendant. This the plaintiff failed to do. The defendant made no answer to the plaintiff's last letter, and after the fourteenth there was no communication between the parties until the fifth day of March, when the telegram was sent to the plaintiff, stating that Osborne & Co. refused to sell the machines. It may be contended and urged that, notwithstanding that there is no evidence of an actual acceptance by the defendant, yet there *is* evidence of *an intention* to fill the order, otherwise defendant would not have remained silent and by its silence left plaintiff to infer that it did intend to ship the machines. We think the evidence tends to show that defendant *intended* to ship the machines *provided* it could get them from the factory.

On the twenty-first of January, the defendant had made arrangements with Osborne & Co. to buy the machines, provided that the order was received by it from the defendant. It was certainly contemplated by the defendant and Osborne that the plaintiff's order must be secured within a reasonable time, which in this case would be about fifteen days. This would have afforded the defendant time to correspond with the plaintiff. But the defendant did not receive the plaintiff's last letter containing the final offer until the twentieth or twenty-first of February, over one month after the first agreement with Osborne & Co. After this lapse of time, it was reasonable that the defendant should decline to bind itself by accepting the last offer of the plaintiff, until it had renewed its contract with Osborne & Co. To this extent, we think it may be said,

that the defendant *intended* to accept the plaintiff's last proposition. But this *intention* was in no way communicated to the plaintiff, and we do not think that such an intention uncommunicated to the plaintiff would constitute an acceptance of the offer made, so as to bind the defendant.

The case of *Jenness v. Mt. Hope Iron Co.*, 53 Me. 23, presented a similar state of facts. The court said: "The learned counsel for plaintiff admit that the letters do not probably of themselves constitute a contract, but they insist that, under the circumstances, slight evidence would be sufficient to supply the defect and show that in fact the plaintiff's modified order was accepted by the defendants. It is highly probable that when the defendants received the plaintiff's order of October 27, they *intended* to fill it, otherwise they should have notified him and not by their silence left him to infer that the nails would be forwarded, when they had no intention of doing it; and if such an intention would be sufficient to complete the contract, and render it binding on the parties, we might perhaps feel justified in inferring it from the defendant's silence and other facts testified to by plaintiff. But we are not satisfied that such an intention locked up in the breast of a party, and not communicated to the other, is sufficient in any case to constitute such an acceptance of a proposition as to create a binding contract. We think it would not."

This last is certainly the most favorable view possible for the plaintiff, and looking at the case from this standpoint we can conceive of no principle of law that would render the defendant liable.

The defendant's non-liability in this case is not grounded on a mere technicality, but arises out of facts, which are in perfect accord with *right* action in all mercantile transactions. There has been an honest misunderstanding between these merchants, and this has been produced by the fact that the plaintiff, in his

letter of the fourteenth, *assumed* that it was possible for defendant to fill his order at any time, and *overlooked* the fact that the defendant did not manufacture the machines or carry them in stock ; and further that it depended entirely on Osborne & Co., whether the defendant could comply or not.

It may have been that the plaintiff believed that the arrangement, which the defendant had made with the factory, was still open. But if he had given the matter due consideration, his experience as a merchant would have suggested to him that the negotiations between him and the defendant had been unreasonably prolonged, and that it was then optional with the factory, whether it would furnish the defendant the machines, or not. This fact was recognized by the defendant, and it therefore declined in any way to signify an acceptance of the last offer without first ascertaining whether Osborne & Co. were still willing to furnish the machines. As soon as Osborne & Co. positively declined to sell the machines to fill the plaintiff's order, the defendant notified him by telegram.

Nor can it be claimed that the defendant received the purchase money for the machines and that by so doing he assented to the contract; because it is in evidence that the defendant returned the money (Mexican silver) in the original packages.

Our conclusion is that the evidence is insufficient to establish a contract, and that the plaintiff cannot maintain this action. The judgment will be reversed and cause dismissed, and final judgment entered in this court for the defendant. Judge THOMPSON concurs. Judge ROMBAUER is absent.