LEWIS H. ROBERTSON, Respondent, v. JOE TAPLEY, Appellant.

St. Louis Court of Appeals, February 16, 1892.

1. **Contracts:** ALTERATION OF PROPOSAL. Where one party submits to the other for signature the draft of a contract between them, and the latter alters it by inserting an additional provision therein, and then signs and returns it, the first draft is to be treated as a rejected proposal for a contract, and the altered form as a counter proposition.

:2. ————— : ————— : ACCEPTANCE. To render such contract binding in its altered shape, it must have been accepted by the party to whom it was returned ; but express notice of the acceptance is not essential, when apparently not contemplated, though, in such case, the acceptance must be clearly manifested by some other act. And *held*, that, in this cause, the submission of the issue as to such acceptance to the jury was warranted by evidence of the retention of the contract in its altered form, without objection, by the party to whom it had thus been returned, and that it was a question for the jury, whether such acceptance was disproved by the testimony of such party, that he had not read the contract after its return.

.3. **Practice, Trial:** PREJUDICIAL ERROR IN THE ADMISSION OF INCOMPETENT EVIDENCE. The rulings of the trial court in the admission of incompetent evidence are considered, and *held* to have constituted prejudicial error.

*Appeal from the Hannibal Court of Common Pleas.*

REVERSED AND REMANDED.

*Farrell & Dempsey*, for appellant.

*Reuben F. Roy*, for respondent.

BIGGS, J.—This is an action for money, and is based
on a written contract which the plaintiff avers was
entered into by him and the defendant. The defendant
admitted that his signature to the instrument sued on
was genuine, but he denied under oath that he made
any such contract. He also alleged in his answer that
a certain clause in the instrument was inserted by mis-
take, and the further defense was interposed that the
alleged contract was rescinded by mutual consent. Upon
the issues thus made the cause was tried, and the finding
of the jury and the judgment of the court were against
the defendant. He has brought the case here by
appeal.

I. The defendant rests his first defense on the fact
that, after the instrument in question was signed by
him and delivered to the plaintiff, the latter without
authority inserted a clause therein which materially
affected the rights of the parties. It appeared in evi-
dence that the defendant had a contract for carrying
the United States mail between the towns of Carpenter
and Hamel in the state of Illinois from July 1, 1883,
to June 30, 1887. The service was tri-weekly. The
defendant lived in Missouri, and he sent an agent to
Illinois for the purpose of subletting the route. He
furnished him with a printed contract signed in tripli-
cate, with blanks for the names of the subcontractor
and his sureties and the compensation. The plaintiff
agreed with this agent that he would carry the mail for
$147.50 per annum, and thereupon the agent delivered
the contracts to the plaintiff, with the understanding
that the latter and his sureties would sign them, and,
when thus executed, he was to mail one to the post-
office department at Washington City, one to the
defendant at his post-office address in Missouri, and the

Robertson v. Tapley.

other was to be retained by him. After the agent left and prior to the execution of the contracts by the plaintiff and his sureties, the plaintiff inserted in the contracts this clause: ": Provided, however, in case full and complete payment is not made within ninety days after the close of a given quarter, the said party of the second part [ plaintiff ] reserves the right to give up and abandon said contract at any time after such failure of payment, and the above obligation is to be void and of no effect." The plaintiff admits that this clause was added to the instrument after the defendant's agent had left, and that he did so in order that he might have some protection in the event the defendant should fail to pay. The plaintiff mailed one of the originals to the defendant, which the latter admits that he received, and another was sent to the department at Washington. The plaintiff proceeded to carry the mail until August, 1883, when the postal authorities changed the service to six times a week. This brought about the present controversy between the parties. The defendant testified that he was not advised of the additional clause in the contract, until the controversy between him and the plaintiff arose. In reference to this branch of the case, the court instructed the jury that the defendant was bound by the contract as written, if he *knew* of the additional clause and failed to notify the plaintiff of his dissent. In dealing with this assignment the defendant's counsel treat the action of the plaintiff as an unauthorized and material alteration of the contract. We do not view the question in that light. When the defendant's agent delivered the contract to the plaintiff with the understanding that he and, his sureties would subsequently execute it, it amounted only to a proposition, and in order to become a contract it was necessary for the defendant to execute it without any material change in its terms. This the plaintiff did not do. He added material matter, which was tantamount to a rejection of the defendant's proposition and

the making of a counter proposition. *Falls Wire Co. v. Broderick,* 12 Mo. App. 378; *Brecheisen v. Coffey,* 15 Mo. App. 80; *Eads v. City Carondelet,* 42 Mo. 113; *Bruner v. Wheaton,* 46 Mo. 363; *Stotesbury v. Massengale,* 13 Mo. App. 221; *Cangas v. Mfg. Co.,* 37 Mo. App. 297; *Jenness v. Iron Co.,* 53 Me. 20; *Baker v. Johnson,* 37 Iowa, 186; *Alsberg v. Latta,* 30 Iowa, 442; *Robinson v. Railroad,* 75 Mo. 494. In order to bind the defendant in this new proposal, it devolved on the plaintiff to introduce some evidence tending to prove that the defendant assented to the new proposition. The court in its instructions assumed that there was such evidence, and this is the real question. The rule is that there is no contract until both parties assent to the same thing in the same sense. A proposition becomes a contract only when the party receiving it communicates, either actually or constructively, his acceptance to the other contracting party. Express notice of acceptance is dispensed with, when apparently not contemplated; but in such a case the acceptance must be clearly manifested by some other act. The burden of showing this is on the party seeking to obtain the benefits of the contract. In the case before us we think that there was sufficient evidence of acceptance by the defendant to carry the question to the jury. The defendant admitted that he received the instrument sent to him through the mails. From this admission the jury would be authorized to draw the inference that he read it. Whether the defendant's evidence to the contrary was sufficient to rebut such an inference was for the jury. This rule of evidence is frequently applied in actions on accounts stated, where it appears that a party has received a statement of his account through the mail, and has made no objection to it. *Brown v. Kimmel,* 67 Mo. 430; *Powell v. Railroad,* 65 Mo. 658. If the defendant did assent to the contract as modified, which necessarily implies knowledge of the change, there was no necessity of direct or actual notice of acceptance, because nothing

else was required to be done by the plaintiff to make the contract complete. The defendant's subsequent conduct in treating the plaintiff as a subcontractor was evidence of acceptance on his part. We must, therefore, conclude that the court committed no error in submitting this issue to the jury.

II. It was claimed by the defendant that the following clause was inserted in the contract through the mutual mistake of the parties: "The party of the second part [ plaintiff ] agrees and covenants that should the post-office department extend, alter or curtail the service, or increase or decrease the number of trips per week upon said route, they will perform the service required, receiving from the party of the first part ( or the auditor of the treasury for the post-office department ) at the same ratio the service as thus altered bears to the service now contracted for." The plaintiff's right of recovery rests on this clause of the contract. In August, 1883, the postal authorities increased the service on the route from three to six times a week. Under the contract, as written, the plaintiff was entitled to $295 per annum instead of $147.50. When the increase of service was ordered, the defendant insisted that this provision in the contract was a mistake, and that his contract with the plaintiff was at an end. After some unsuccessful negotiations with the plaintiff looking to a new arrangement, the defendant sublet the route for the remainder of the time to another party. At the end of the first year the plaintiff brought this action based upon the claim, that the contract had been violated by the defendant, and that he was liable to plaintiff thereunder for the sum of $295.

In the discussion of the questions arising under this assignment it will not be necessary to state in detail the evidence which bore on the question of mistake. It will suffice to say that there was substantial evidence introduced on both sides of the issue. The questions

presented for our determination pertain to the action of the court in admitting evidence, which the defendant claims was incompetent and prejudicial to him.

For the purpose of showing the alleged increase of service on this particular mail route, the plaintiff, against the defendant's objection, read in evidence a copy of the records of the post-office department, certified by the postmaster general to be a true copy of the records of his department. The following was objected to by the defendant's counsel, and especially that part in italics: "1883, August 3. Increased service, August 16, 1883, to six trips a week, *allowing contractor and subcontractor respectively $54.95 and $147.50 per annum, additional pay being pro rata.*" That portion of the record showing an increase of service was competent, but the remainder was incompetent and calculated to mislead the jury. Whether the plaintiff was entitled under his contract to have his pay doubled because the service had been doubled, could not be decided by the post-office officials. It is impossible to say what effect this item of evidence had on the minds of the jury. Presumptively its effect was prejudicial to the defendant, and there is nothing in the case to rebut the presumption.

The plaintiff also read in evidence a copy of the contract with the following certificate attached:

"POST-OFFICE DEPARTMENT, }
"WASHINGTON, D. C., July 7, 1888. }

"I certify that the annexed is a true copy taken from the files and records of this department. In testimony whereof I have hereunto set my hand and caused the seal of the post-office department to be affixed the day and year above written.

"(Signed)    DON M. DICKINSON,
"Postmaster General."

It is impossible to understand the object of this testimony. It was not necessary for the plaintiff to read this copy to prove the contract, because he had one

of the originals in his possession. Nor was it necessary to show that he had complied with his agreement to send one of the originals to the post-office department for the reason that he had already sworn that he did, and it was not disputed. If the plaintiff had any particular object at all it certainly was to impress upon the jury the fact that the contract as written had received official recognition at the department. We think that the evidence was calculated to mislead the jury.

After this controversy arose between the parties the defendant sublet the route for the remainder of the time to one Wehling. This latter contract contained a clause similar to the one in controversy. The court permitted the plaintiff to read the Wehling contract in evidence upon the theory, as we assume, that it had some tendency to prove that the objectionable clause was not inserted in plaintiff's contract through mistake or inadvertence. We are of opinion that this was error. The contract evidenced by that paper was *res inter alios acta*, and besides the conditions under which the two contracts were entered into were different. It will be observed that the defendant was losing money on the route, and that an increase of service would increase his loss in proportion, unless he could make better terms with the subcontractor. For double service it is not unreasonable to suppose that a contract could be made with the plaintiff, or some one else, for less than double the amount which the plaintiff was to receive. Hence, the contract as actually written was clearly against the defendant's interest, for the reason that the service was likely to be increased at any time, which actually occurred about one month afterwards. But when the Wehling contract was made the *maximum* service had been reached, and a clause like the one in controversy would be of but little consequence to the defendant. This evidence was incompetent, and it was clearly prejudicial.

For the admission of incompetent evidence the judgment of the Hannibal court of·common pleas will be reversed and the cause remanded. All the judges concur.