J. M. BRINKER ET AL.

V.

O. F. SCHEUNEMANN.

*Sales—Lex Loci—New York Statute of Frauds—Alteration of Proposition, Whether Material.*

1. Where a person residing in one State orders goods of a person residing in another State, who is there to deliver the goods to a carrier for the purchaser, the contract is made in the State of the vendor and its validity is to be determined by the law of that State.

2. Where an order as prepared by a vendor to be signed by vendee provided that vendee should, if required, give his paper at sixty days and the vendee, before signing, so changed the order that it provided that he should give his paper, if required, " at sixty or ninety days," the effect of the change was to give the vendee the option as to the time for which he should give his paper and was a material alteration in the proposed contract.

[Opinion filed February 9, 1892.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Messrs. ULLMAN & HACKER, for appellants.

Mr. JOHN C. RICHBERG, for appellee.

MORAN, J. This was an action to recover for the failure

to deliver certain coal which it is claimed appellants agreed to deliver to appellee. From a judgment in favor of appellee this appeal is prosecuted.

Through two coal brokers as agents, one named Roberts, residing in Buffalo, N. Y., and one named Negley, residing in Chicago, certain negotiations were carried on for the purchase by appellee of about 1,000 tons of coal from appellants. It is unnecessary to detail the communications that passed between the brokers further than to say that they ascertained the prices at which appellants would sell the different kinds of coal, and about the quantities of the different kinds which appellee would want, and the general terms on which a contract for the sale of the coal from appellants to appellee could be made. On June 12, 1888, Negley, in his own name, addressed to Roberts an order to ship to appellee three cargoes of coal, stating price, quality, etc. This order was presented to Packard, appellants' manager in Buffalo, by Roberts, but he refused to ship the coal because neither Roberts nor Negley was financially responsible, and said that if appellants sold any coal to Scheunemann they would want the order to come direct from him and to be signed by him and exactly as they proposed it. Packard, acting for appellants, thereupon drew up an order and sent it to Roberts with the following letter:

"BUFFALO, June 13, 1888.

W. T. ROBERTS.

*Dear Sir:*—We inclose you herewith an order which you will please have Scheunemann & Company sign and return to us. You are to have from this price on the payment of the account ten cents per gross ton.

BRINKER & JONES."

The order inclosed was as follows:

"CHICAGO, June 13, 1888.

BRINKER & JONES,
        Buffalo, N. Y.

*Gentlemen:*—Please enter our order and ship as soon as possible three cargoes anthracite coal, about three thousand tons, as follows: grate and egg, $3.80; stove and chestnut,

$4.05 per net ton, f. o. b. vessel, Buffalo. First cargo chestnut if you can, or grate and chestnut, or if you can not do that make it egg; if a mixed cargo, aft. In this order I shall require about 1,000 tons each size, grate, egg and nut. I do not want any stove in this order, unless you are unable to make up a cargo without that size. In that event you can put in say 500 tons stove. Terms of settlement, cash at end of sixty days from date of bill of lading. Dock weights to govern settlements.

If you require it we will give you our paper at sixty days from date of bill of lading. Coal to be of good quality and nicely prepared."

Roberts inclosed the order to Negley, telling him in the accompanying letter that appellants wanted appellee to sign it, and requesting Negley to have him do so without delay and to send it to him, Roberts, when signed, and he would deliver it to appellants. Instead of having the order signed as it was drawn by appellants' manager, it was changed so as to make the portion of it immediately following the sentence " Dock weights to govern settlements " read as follows :   " If you require it we will give you our paper at sixty days or ninety days from date of bill of lading, we paying the interest on time exceeding the sixty days. Coal to be of good quality and nicely prepared. We would prefer you to make the order 1,000 grate and egg, 500 range and 1,500 chestnut."

Thus altered, the order was signed by appellee and was forwarded to Roberts, who delivered it to appellants' manager in Buffalo about June 15th.

There is a conflict of evidence as to whether, when Roberts handed the said order to Packard, the latter said that appellants would fill it, but in the view we take of the case this dispute is not as to a material matter.

It is not pretended that appellants or their manager ever accepted the order in writing, and on June 22, 1888, they forwarded to appellee the following letter :

" O. SCHEUNEMANN & Co., Chicago Ill.

*Gentlemen:*—Some few days ago we were handed an order from you for some vessel coal. We should be glad to furnish this lot of coal, and are sorry that it is impossible for us to

do so.   Our vessel brokers here refuse to give us boats to go to your dock.   The tonnage and terms are not as talked here.

We trust that when you are again in the market you will give us an opportunity of quoting you, and remain,

Yours very truly, .

BRINKER & JONES.   P."

Appellee insisted in a letter to appellants written on July 7th, that he had purchased three cargoes of coal from them, and notified them that he would go on the market and buy the coal and hold them for the loss, as coal had advanced; and appellants replied, on July 12th, that they had sold appellee no coal, and that they would entertain no claim for loss he might sustain.

The appellants pleaded the New York statute of frauds. The part of said statute material here declares that "every contract for the sale of any goods, chattels or things in action for the price of $50 or more shall be void, unless a note or memorandum of such contract be made in writing, and be subscribed by the parties to be charged thereby." It is contended by appellants, that the order received by them from appellee was a new proposition; that it could not become a contract till it was properly assented to by them, and as that assent was to be given in Buffalo and the contract was to be performed there, it would be a New York contract governed by the statute of frauds of that State, and as there was no assent to or acceptance of the order in writing by the party sought to be charged upon it, it never became binding as a contract.

The rule is that the contract is to be interpreted and defined by the law of the place where it is made, and where, in the absence of anything to indicate the contrary, it is presumed that it is to be performed.   " If a person residing in one State orders goods of one residing in another State, who there delivers the goods ordered to a carrier for the purchaser, the contract is made there, and its validity depends upon the law of the State of the seller's residence."   3 Am. and Eng. Ency. of Law, 857, note 3, and cases there cited.   Therefore, if the order signed by the appellee and forwarded by him to appellants is to be treated as appellee's proposition to them, it

Brinker v. Scheunemann.

never became binding on them for the reason that their accept-
ance of its terms or agreement to fill it was not evidenced as
required by the statute of New York. It is contended by
appellee that the order is to be treated as appellants' proposal
to him, and that he accepted and signed it as they sent it, or
without material change. It is said that the changes made in
the latter part of the order was no change of the contract;
that it only gave to appellants another option as to terms of
payment and did not relieve appellee from the contract as pre-
pared, in any way, or vary its terms. It may be true that if
the effect of the changes in the order was only to give appel-
lants an option as to whether they would take appellee's paper
at sixty days or ninety days, the change would not be mate-
rial; but that is not the effect of the alteration. Instead of
his promise to give his paper at sixty days if appellants should
require it, he makes a promise to give his paper at sixty or at
ninety days. The option is secured to him and not to appel-
lants. Where a contract is in the alternative, as that the
promisor shall pay in money or in goods, "or shall pay a
sum of money or deliver a horse to the promisee," the right
to select the mode of performance is impliedly vested in
the promisor. 2 Chitty on Con., 1061; Bishop on Con., Sec.
785. Without considering whether the other changes made in
the order were material or not, it is manifest that this one was
of such a character as rendered the order signed by appel-
lee different in a substantial particular from the one sent to him
by appellant to be signed. The act of appellee in so changing
the order sent to him by appellants amounted to a rejection of
their offer and a substitution of his own proposition in its
place. They were thus released from the acceptance implied
from thus having prepared the order and having sent it to him
to be signed, and as we have seen that they never assented to
appellee's proposition in such manner as to make it valid or
binding upon them, the result was that no contract was formed
between the parties, and consequently there is no basis for this
action. Maclay v. Harvey, 90 Ill. 525; Fox v. Turner, 1 Ill.
App. 153; Smith v. Wetherell, 4 Ill. App. 655.

The contention of appellee that a contract was made and

signed by Roberts for the sale of the coal is without support in the evidence. An agreement as to certain terms of a contract was arrived at between Roberts and Negley, but Roberts' letter of June 11, 1888, clearly shows that no contract was then formed between appellants and appellee. Therein he directs Negley: "Be sure and have Otto (Scheunemann) write out this order to Brinker, Jones & Co., and have him state that dock weights govern. Make it so binding that he can't crawl out of it."

The verdict of the jury is clearly against the law and the evidence, and the motion to set the same aside should have been granted.

The judgment will be reversed and the case remanded.

<i>Reversed and remanded.</i>