THOMAS JENNESS *versus* MOUNT HOPE IRON COMPANY.

To constitute a contract, there must be a proposition by one party accepted by the other without any modification whatever.

Where the plaintiff wrote to the defendant — "what will you sell me 450. kegs of nails for, delivered at B, within one month, cash?" — to which he replied — "will sell you 450 kegs common assorted nails, delivered at time and place mentioned, at $3,62 per keg of 100lbs., each, cash;" and plaintiff rejoined — "nails have advanced so much, I am afraid to buy, but you will send me, as soon as possible, 303 kegs, (specifying the kinds,) and I will send you a check on Exchange Bank, Boston;" and, not hearing from the defendant, the plaintiff wrote again, asking the defendant to ship nails, as navigation would soon close; to which defendant replied — he could not get out the nails ordered by the plaintiff that month, on account of previous orders, but promising his order should receive attention when he got to it; — *Held,* the correspondence did not constitute a complete contract; the defendant's proposition to deliver 450 kegs, at $3,62 per keg, not having been accepted by the plaintiff, and the plaintiff's order for 303 kegs not having been accepted by the defendant.

An intention to accept a proposition is not an acceptance, unless communicated to the party making it.

A contract, required by the statute of frauds and perjuries to be in writing, in order to be binding, can receive no aid from parol evidence.

ON REPORT from *Nisi Prius,* APPLETON, C. J., presiding. ASSUMPSIT for an alleged breach of contract.

The plaintiff put into the case several letters, the substance of which appear in the opinion of the Court. He offered to prove that he relied upon receiving the nails according to said correspondence, and was damaged by not receiving them; that defendants manufacture at Somerset, Mass., and a direct shipment would be from Somerset; that

defendants had often shipped nails to him before, from Boston; that, on Nov. 22, 1862, he saw Mr. Leonard, defendants' managing agent, in Boston; that he gave at that time, as a reason for not sending the nails, that there was no opportunity to ship direct; that plaintiff told him that was no excuse, as he had often sent them from Boston; then Leonard said nails had advanced, and that Bullard, Abbott & Co., his agents, had sold all he could get out. Leonard then declined to let plaintiff have nails under that contract, and he then bought of Bullard, Abbott & Co., defendants' agents, at an advanced price, forty kegs, as he had already sold that amount, relying on defendants to fulfil their contract. He paid for the same nails, as contracted for, $4,50 per keg, less five per cent. off, commissions. Nails had risen in value after his order, and before the twenty-second of November, spoken of. He never received any nails under the contract and never received any notice from defendants after Nov. 22, 1862. Would have been glad to have made the purchase any day, from that day to this.

If, upon so much of this statement as is legally admissible, a *prima facie* case for damages is made out, then the action was to stand for trial, otherwise the plaintiff was to be nonsuit.

*J. A. Peters & J. F. Rawson*, for the plaintiff.

*C. P. Stetson*, for the defendants.

WALTON, J.—This is an action for an alleged breach of contract, and is before us on report. If so much of the plaintiff's evidence as is admissible, is sufficient, *prima facie*, to entitle him to damages, the case is to stand for trial; otherwise a nonsuit is to be entered.

The plaintiff says that the defendants bargained and sold to him three hundred and three kegs of nails, to be delivered at Bangor, before the close of navigation, in the fall of 1862.

The defendants do not deny that there was a negotiation for the sale of nails; but they deny that the negotiation ever

ripened into a contract, by which the parties were bound; and the question is whether the evidence is sufficient, *prima facie*, to show such a contract; that is, a contract *completed*.

The negotiation was carried on by letter; and, omitting what is irrelevant and immaterial, amounts substantially to this:—

*Plaintiff.* (Oct. 20. 1862.) "What will you sell me 450 kegs of nails for, delivered at Bangor, in the course of a month, cash down?"

*Defendants.* (Oct. 23, 1862.) "We will sell you 450 casks common assorted nails, delivered on the dock at Bangor, at $3,62 per keg of 100lbs. each, cash."

*Plaintiff.* (Oct. 27, 1862.) "Nails have advanced so much I am almost afraid to buy; but you will send me as soon as possible, 303 kegs, (naming the kinds,) and I will send you a check on Exchange Bank, Boston."

*Plaintiff.* (Nov. 11, 1862.) "Not having heard whether you have shipped the nails ordered, I thought I would write you as we shall have but a few weeks more of navigation."

*Defendants.* (Nov. 14, 1862.) "It will not be possible for us to get out the nails you have ordered this month, as previous orders must take precedence. It is next to impossible for us to get out nails enough to supply our back orders, and we thought it best to write you, as navigation may be closed too soon for us to forward them this fall. We will, however, do our best to satisfy all our customers, and your order shall receive attention when we get to it."

This is the whole substance of the written correspondence between these parties, and we look in vain to find in it evidence of a contract *completed;*—a proposition by one party, accepted without modification, by the other.

The defendants offered to deliver *four hundred and fifty casks* at $3,62 per cask; but this offer was not accepted by the plaintiff; and his order for *three hundred and three casks* does not appear to have been accepted by the defendants.

We look in vain for a distinct proposition by either party, which is accepted without modification by the other.

To constitute a contract, there must be a proposition by one party, accepted by the other, without any modification whatever. If the acceptance modifies the proposition in any particular, however trifling, it amounts to no more than a counter proposition; it is not in law an acceptance which will complete the contract. The letters between these parties fail, therefore, to establish a *prima facie* case for the plaintiff.

The learned counsel for the plaintiff admit that the letters "do not probably of themselves constitute a contract;" but they insist that, under the circumstances, *slight evidence* would be sufficient to supply the defect, and show that in fact the plaintiff's modified order was accepted by the defendants. It is highly probable that when the defendants received the plaintiff's order of October 27, they *intended* to fill it; otherwise they should have notified him, and not by their silence left him to infer that the nails would be forwarded, when they had no intention of doing it. And if such an intention would be sufficient to complete the contract, and render it binding upon the parties, we might, perhaps, feel justified in inferring it from the defendants' silence, and other facts testified to by the plaintiff. But we are not satisfied that such an intention, locked up in the breast of a party, and not communicated to the other, is sufficient in any case to constitute such an acceptance of a proposition as to create a binding contract. We think it would not.

It would be unjust to the other party to hold him bound by such an acceptance; and, unless both parties would be bound by it, neither would be, for want of mutuality.

But there is another difficulty in the way of allowing such an unexpressed intention to have the effect of a binding acceptance. The alleged contract was for the sale of goods for more than thirty dollars. The plaintiff does not pretend that he accepted any portion of them or that he gave anything in earnest to bind the bargain, or in part payment thereof; and, unless the defendants can be charged by virtue of some note or memorandum in writing, signed by them or

their agent, the contract will be void under the statute for the prevention of frauds and perjuries. (R. S., c. 111, § 5.) Such a memorandum may be contained in the written correspondence of a party, but the correspondence taken together must establish the contract plainly in all its terms, or it will not be sufficient. It can receive no aid from parol evidence. The policy of the law is to prevent perjury, by making it impossible for a party to profit by it. Cases falling within its operation, therefore, can receive no aid from parol evidence. (2 Greenl. on Ev., § 268.) We think the evidence legally admissible fails to establish a *prima facie* case for the plaintiff. *Plaintiff nonsuit.*

APPLETON, C. J., CUTTING, KENT, BARROWS and DANFORTH, JJ., concurred.