Fox v. Turner.

## Mary E. Fox

v.

## Herny L. Turner.

1. CONTRACT—OFFER—ACCEPTANCE.—An acceptance, to be good, must in every respect meet and correspond with the offer made, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand.

2. REJECTION OF OFFER—PROPOSAL OF DIFFERENT TERMS.—A proposal to accept an offer, on terms varying from those proposed, amounts to a rejection of the offer and a substitution in its place of a counter proposition, which cannot become a contract until assented to by the first proposer. The original offer thereby loses its vitality, and is no longer pending between the parties, and it becomes an open proposition again only when renewed by the party who first made it; hence, the party who submitted the counter proposition cannot, without consent of the other, withdraw or abandon the

same and then accept the original offer, which he has once virtually rejected.

3. TIME OF ACCEPTANCE.—The acceptance of a proposition communicated by letter, is complete on the delivery of such acceptance to a messenger, to be carried to the proposer, and the contract is binding from that point of time, and not from the time of its delivery to the proposer; so that if B gives to a messenger for the purpose of delivering to A an acceptance of a proposition made by A, simultaneously with the time that A dispatches a messenger to notify B that the proposition is withdrawn, the acceptance is complete and the contract binding.

APPEAL from the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding.

Messrs. TULEY, STILES and LEWIS, for appellant; contended that there was no acceptance, and cited Chitty on Con. 11; Metcalf on Con. 18; 1 Hilliard on Con. 28; 1 Story on Con. 502; 1 Parsons on Con. 476; Potts v. Whitehead, 23 N. J. Eq. 512; Myers v. Smith, 48 Barb. 614; Fenno v. Weston, 31 Vt. 345; Hutchinson v. Barker, 5 Mees. & W. 535; Jordan v. Norten, 3 Beavan, 336; Cornwells v. Krengel, 41 Ill. 394; Beckwith v. Cheever, 21 N. H. 41; Eliasor v. Wheaton, 4 Wheat. 225; Carr v. Duval, 14 Pet. 77; R. R. Co. v. Jackson, 24 Conn. 514; Baker v. Johnson County, 37 Ia. 186; Jenness v. Mount Hope Iron Co. 53 Me. 20; Benjamin on Sales, 40; Sheffield Canal Co. v. R'y Co. 3 Railway & Canal Cas. 121; Hyde v. French, 3 Beavan, 334; B. & M. L. R'y Co. v. Town of Unity, 62 Me. 148; Tinn v. Hoffman & Co. 29 Law Times, 273; Felthouse v. Bindlay, 11 C. B. (N. S.) 869.

Messrs. BARNUM and VAN SCHAACK, for appellee; upon the question of acceptance and when it took effect, cited 1 Parsons on Con. 483; Hutchison v. Blakeman, 3 Met. 80; Mactier v. Frith, 6 Wend. 103; 2 Dutcher (N. J.) 282.

BAILEY, J. This was an action of assumpsit, brought by appellant against appellee in the County Court of Cook county. The declaration avers the execution by one Charles M. Jaques to appellee, of a lease of certain premises in Chicago, from the 20th day of September, 1875, to the 30th day of April, 1879, at

$60 per month, payable monthly in advance; the grant of the reversion and assignment of the lease by said Jaques to appellant; the attornment by appellee to appellant, and default in the payment of rent for the months of October, November and December, 1877.

Appellee plead non assumpsit, and upon trial by the court, without a jury, the issue was found, and judgment rendered for appellee.

The evidence upon the trial showed that, after the purchase of the demised premises by appellant, by agreement between her and appellee, the rent was reduced from $60 to $50 per month.

The defense made upon the trial was, that prior to the accruing of the rent sued for, an agreement was entered into between appellant and appellee, whereby the lease was canceled. The evidence by which appellee sought to establish such contract consists of certain correspondence between the parties. On the 24th of August, 1877, appellee having determined to move out of the demised premises, sent to appellant's attorneys, by mail, the following letter:

" Chicago, August 24, 1877.

"Messrs. Tuley, Stiles & Lewis, Chicago:

" *Gentlemen:*—I have very nearly completed my moving, and shall leave the house (Mrs. Fox's, 471 W. Jackson) to-morrow. There are some articles of value which I am willing to leave if the lease is canceled. There are some two or three tons of coal, carpets in good order on two bedrooms and in the dining room, oil-cloth on the kitchen and bath-room, window shades in nearly all the windows, and screens in almost every window.

" Yours very truly,

" H. L. Turner."

This letter was forwarded by said attorneys to appellant with the following written thereunder:

" If you want to do anything about this you can let us know. Yours, etc.,

" Tuley, Stiles & Lewis."

On the 28th of August appellee received from said attorneys the following reply:

"CHICAGO, Aug. 27th, 1877.

"HENRY L. TURNER, ESQ.,

"*Dear Sir:*—Your note in regard to giving up house to Mrs. Fox we forwarded to her. She has been in, and will cancel the lease, provided you leave the things you mentioned, and pay the rent for September. Yours, etc.,

"TULEY, STILES & LEWIS."

August 29th appellee wrote as follows:

"CHICAGO, August 29, 1877.

"MESSRS. TULEY, STILES & LEWIS, CHICAGO :

"*Gentlemen:*—Your note of the 27th is received. I am having the calciminers touch up the walls in one or two places where they have been marred a little since spring. If Mrs. Fox will allow this bill towards the rent for September, and will take a single bed, mattress and bureau, and a load of kindling, which are in the house, as $15.00 towards the amount of rent, I will try to raise the balance to-day. The calciminers' bill will not be over $5.00. The articles mentioned in my letter of August 24th, I would leave, of course.

"Yours very truly, H. L. TURNER."

This letter was forwarded to appellant by one of her attorneys, with the following note:

"You see by the above that Mr. Turner will pay you $35, and turn over the above property in addition to what he mentioned before, if you will release him and pay the calcimining bill of $5. Let me know what you want to do.

"Yours, etc., JNO. LEWIS."

On the morning of September 1st appellee sent to said attorneys, by messenger, the following letter:

"CHICAGO, September 1, 1877.

"MESSRS. TULEY, STILES & LEWIS, CHICAGO :

"*Dear Sirs:*—Have you received word from Mrs. Fox in reference to taking the articles named in my last to apply on the rent for September? Yours very truly,

"H. L. TURNER."

Fox v. Turner.

This letter was returned to appellee by the same messenger, with the following answer underwritten:

"I have not. I enclosed your note to her, and asked her to let me know what she would do. Will let you know when I hear from her.

"JNO. LEWIS."

Appellee then caused all his goods to be removed from the house, except those mentioned in his letter of August 24th, and at about 2 o'clock P. M. sent a messenger to the office of said attorneys with a certified check for $50, and his lease of the premises and the keys of the house, with instructions to notify them that he accepted the offer of appellant contained in the letter of August 27th, and to deliver the check and keys and to ask a cancellation of the lease. The messenger returned at about a quarter to 4 o'clock, and reported that he found the office of said attorneys locked. Appellee then sent the same messenger to the residence of appellant, with the same instructions, and the following letter to be delivered to her:

· "CHICAGO, Sept. 1, 1877.

"MRS. MARY E. FOX, CHICAGO:

"*Dear Madam:*—I have decided to accept your offer for cancellation of lease on payment of rent for September, and delivery of articles mentioned in my note of August 24th to your attorneys, Messrs. Tuley, Stiles and Lewis. I sent around to their office, but none of them were in, and as I do not wish to be responsible for the house over Sunday, I send direct to you. Enclosed you will find my certified check for $50, and the bearer will give you the key to the house. Please write across the face of the lease canceled, and sign your name. You will find everything right in the house, except one pane of glass in the basement, where the house was entered this morning. The thieves were scared away before any harm was done, however.

"Yours very truly,

"H. L. TURNER."

About 5 o'clock the same afternoon, appellee received by mail, from appellant's attorneys, the following letter, the same having been writen and mailed that day, viz:

"CHICAGO, Sept. 1, 1877.

"MR. TURNER:

"*Dear Sir:*—Mrs. Fox has concluded to revoke her offer to cancel the lease of 471 W. Jackson street, and to hold you for the rent until the end of the term. The rent for September is due to-day. Will you please send us a check for it?

"Yours,

"TUTILES & LEWIS."

The evidence leaves it uncertain whether this letter revoking the offer, came to appellee's hands before or after the arrival of his messenger at appellant's house. Both occurrences are placed at about 5 o'clock, and may have been simultaneous, or either may have been prior in time, so far as the evidence shows.

We think it however to be wholly immaterial which of these events transpired first, since it appears beyond question that appellee's messenger *was dispatched* with his acceptance, before the letter of revocation was received. If the offer contained in the letter of August 27th was open for appellee's acceptance on the first day of September, the *aggregatio mentium* must date from the time his messenger was sent, and not from the time of the delivery of the notice of acceptance. Any overt act amounting to a manifestation of a formed determination to accept, communicated or put in the proper way to be communicated to the party making the offer, completes the contract. The case is not changed by the fact that the messenger by whom the acceptance was transmitted, was the party's own agent. The real question is whether the intention to accept was manifested by any overt act, not by what kind of messenger it was sent. Hallock v. Commercial Ins. Co. 2 Dutch. 268; Mactier v. Frith, 6 Wend. 103.

The vital question in this case, however, is, whether the proposition contained in the letter of August 27th was open at the time appellee undertook to accept it. The solution of this question will depend upon the legal effect to be given to appellee's letter of August 29th.

Appellee, upon receiving from appellant an offer to cancel

the lease upon certain specified terms, was at liberty to accept or reject it, but he was bound to do one or the other. If he chose to accept it, he could only do so precisely according to its terms. Anything short of this was a virtual rejection.

An acceptance, to be good, must in every respect meet and correspond with the offer, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand. Potts v. Whitehead, 23 New Jersey Eq. 5'2. But a proposal to accept, or an acceptance of an offer, on terms varying from those proposed, amounts to a rejection of the offer and a substitution in its place of a counter proposition, which cannot become a contract until assented to by the first proposer. It is equivalent to saying "I am not satisfied with your proposition, but I will take it and make certain modifications in it, and submit it to you, as a proposition of my own for your acceptance." The original offer thereby loses its vitality, being, so to speak, passed by in the course of the negotiation, so as to be no longer pending between the parties, and it becomes an open proposition again, only when renewed by the party who first made it. Hence, a party who has submitted a counter proposition cannot, without the assent of the other party, withdraw or abandon the same, and then accept the original offer which he has once virtually rejected. 1 Pars. on Contr. 477; Baker v. Johnson, 37 Iowa, 186; Eliason v. Wheaton, 4 Wheat. 225; Carr v. Duval, 14 Pet. 77; Jenness v. Mount Hope Iron Co. 53 Me. 20; B. & M. L. R'y Co. v. Town of Unity, 62 Id. 148; Sheffield Canal Co. v. Railway Co. 3 Railway & Canal Cas. 121; Tinn v. Hoffman, 29 Law 'Times' Rep. 273.

Appellee, by his letter of August 29th, proposed to accept appellant's offer, with certain modifications. He thus submitted to appellant a counter proposition which she could accept or reject, but by the same act he precluded himself from the right to go back and peremptorily accept the appellant's offer, and thus bind her without any further assent on her part. Before she could be bound, it was necessary that she should again manifest her assent to her original proposition, or do some act which would be tantamount to renewing it.

There being no evidence in the record of the renewal by appellant of the offer contained in her letter of August 27th, after its virtual rejection by appellee, by his letter of August 29th, the evidence fails to establish any contract between the parties canceling the lease. The lease then being in force, the court below should have rendered judgment in favor of appellant against appellee for $150, the rent due at the commencement of the suit, and costs.

But it is insisted by counsel for appellee, that the letter of appellant's attorneys of September 1st, in which they say: "Mrs. Fox has concluded to revoke her offer to cancel the lease," etc., shows that up to that time appellant and her attorneys regarded the original offer as still pending. Whether such is the effect of this letter or not, we do not deem it material what may have been the views or opinions of appellant or her attorneys on this subject, so long as those views or opinions were manifested by no acts on their part. Her offer having, in point of fact, been rejected, so as to be no longer binding on her, it cannot be material whether she or her attorneys supposed it to be still binding or not.

The judgment in this case being contrary to the rights of the parties, as shown by the evidence, it is hereby reversed and the cause remanded.

Reversed and remanded.