BLAND & SERVER v. W. S. BROOKSHIRE.

(No. 5847.)

APPEAL from Williamson County.   Opinion by WHITE, P. J.

COCHRAN & PARKER, counsel for appellants.

A. S. FISHER, counsel for appellee.

§ **446.** *Contract; illegality of, when made on Sunday; rules as to; case stated.* This is an action by appellants against appellee on a contract in substance as follows:

Appellee, on August 1, 1887, consigned ninety-one head of cattle to R. M. Flautt & Co., commission merchants in New Orleans, Louisiana, for sale on the New Orleans market, and return of proceeds, less $400 drawn by him on said Flautt & Co. against said cattle at the time of shipping same.

On the 7th of the same month appellants proposed to appellee to purchase the said cattle and take the proceeds of the sale thereof, less the $400 already drawn on same, and give him therefor $150, the money to be paid and the proceeds of the sale delivered on receipt by appellee of the account of sales or sale bills from said Flautt & Co., which proposition appellee then and there in terms accepted. The cattle were sold on the 6th and 7th days of said month, and the proceeds of the sale thereof, less the said $400, and the account of sales, were remitted to appellee by said Flautt & Co., and were by appellee received in due course of mail on the 13th of said month of August; but appellee refused to deliver to appellants the account of sales or the proceeds of the sale, or any part thereof, or to make known to appellants the amount of such proceeds, though repeatedly requested so to do, and notwithstanding there was a balance of said proceeds remaining, after deducting the said $400, the $150 promised by appellants to be paid to appellee, and all costs and expenses incidental to the shipping and marketing of said cattle. On the 14th of said month appellants tendered to appellee on said contract in legal tender money $150, and demanded the account of sales and the proceeds of the sale, less the said $400; but appellee still refused to deliver the same, or any part thereof, or to make known to appellants the amount said cattle sold for. Appellants in their petition set out the diligence used by them to ascertain the amount said cattle brought on the New Orleans market, and their inability to discover it, and

allege the same in their belief to be $500. They asked for judgment for such amount as the facts would show them entitled to on said contract.

The appellee answered to the petition:

1. General denial.

2. Specially, that if appellants and appellee ever entered into any contract, it was essentially different from the one declared on in the petition; and that such contract was entered into on a Sunday; and the parties at the time of consummating it, being traders and dealers in cattle and their proceeds, the contract was contrary to the statutes of the state, and therefore void and incapable of enforcement; that the contract was not a *bona fide* sale of the cattle, but was a speculation and gambling on the price they should bring on the market, and in law was a wager; and that if appellee entered into any such contract, he did not deal with appellants on equal terms, they being in possession of facts which it was their duty to make known to him, regarding the price said cattle sold for, and which was intended for him.

Appellants filed first supplemental petition by way of replication to appellee's answer, and pleaded specially that, subsequent to the time of making the said contract, appellee ratified the sale of the said cattle on secular days, and treated the same as valid, legal and binding.

The cause was tried before the court without a jury, and judgment rendered on November 3, 1887, that plaintiffs take nothing by their suit, and defendant go hence and recover costs, etc.

In his conclusions of fact and law the trial judge found and concluded that the contract being made on Sunday was in violation of article 183 of the Penal Code of Texas, and cannot be enforced. *Held:* In the view we take of the case it is unnecessary to decide whether or not the trade was void because in contravention of the Sunday law. It certainly was not in contravention of article 183 of the Penal Code, which prohibits "labor" on Sunday. The word "labor" does not embrace the simple making

of a bargain within the meaning of the statute. [Bloom v. Richards, 2 Ohio St. 388.] If there was a violation of the Sunday law in this instance, it was a violation of article 186 of the Penal Code, which prohibits "a trader in any business whatsoever" from bartering or selling on Sunday. Appellants were shown to have been cattle traders, whether appellee, the *seller*, was or not. [Hazard v. Day, 14 Allen, 487; Bloxsome v. Williams, 3 Barn. & C. 232; 7 Wait's Act. & Def. p. 116.] Our supreme court, construing said article 186, says: "It had for its special object the prevention of traders from pursuing their usual business of barter and sale, and thereby promote a proper respect for the sanctity of that day, dedicated, as it should be, to rest, contemplation and worship." [Schneider & Davis v. Sansom, 62 Tex. 201.] But the view we have of the facts of this case is that the contract in question *was not completed and executed on Sunday.* With regard to contracts it is a general rule that, "to constitute a binding contract, the legal assent of the parties is absolutely indispensable; it should be without restraint; it should be understandingly made, and without error or mistake. To create a contract it is essential that there should be reciprocal assent to the same thing in the same sense." [Suydam v. Clark, 2 Sandf. 133; Jenness v. Mt. Hope Iron Co. 53 Me. 20; R'y Co. v. Jackson, 24 Conn. 514.] "The validity of a contract depends upon the fact that the parties thereto give free and full assent to all its terms; and, if there be any misunderstanding as to any material portion of it, there will not be any contract." [1 Wait's Act. & Def. pp. 83, 84.] In this case evidence clearly shows a misunderstanding of the parties as to whether the price agreed on, on Sunday, viz., $550, was the *net* price to be paid for the cattle. Appellee and the witness Williams, who was called to witness the trade, both understood that $550 *net* was the price; but such was not the understanding of appellant Bland, the purchaser. Several days after the transaction on Sunday, appellee claimed that there were $16 inspection fees, and the ex-

penses of a hand who accompanied the cattle to New Orleans, which must be paid by appellants in addition to said sum of $550. After chaffering about this matter between the parties, appellants finally agreed that they would pay the inspection fees, $16. Up to this time, owing to said misunderstanding of the terms of the contract, it was not a complete contract; and the terms then having been for the first time understood and agreed upon by the parties, the Sunday negotiation was made complete on a secular day, and on said last day became a contract. A contract fully executed on Sunday, if made in violation of statute, is void. [Lyon v. Strong, 6 Vt. 219; 2 App. C. C. § 674.] But, when not fully closed on that day, the contract is not void because some of its terms might have been fixed on that day, or, indeed, because most of the business out of which the consideration for the contract arose was transacted upon that day. [Lovejoy v. Whipple, 18 Vt. 379; Ray v. Catlett & Buck, 12 B. Mon. (Ky.) 532.] As was said in Adams v. Gray, 19 Vt. 358, "We think contracts made upon Sunday should be held an exception in some sense from the general class of contracts which are void for illegality. Such contracts are not tainted with any general illegality; they are illegal only as to the *time* in which they are entered into. When purged of this ingredient they are like other contracts. Contracts of this kind are not void because they have grown out of a transaction upon Sunday. This is not sufficient to avoid them; they must be finally closed upon that day. And, although closed upon that day, yet if affirmed upon a subsequent day they then become valid." [See, also, Williams v. Paul, 6 Bing. 654; Bloxsome v. Williams, 3 B. & C. 232.] We are of the opinion that the trial judge erred in holding that the contract could not be enforced because made in violation of the Sunday law.

§ 447. *Same; wager; rules as to.* The trial judge concluded further that, in legal effect, the contract was a wager on the market price of the cattle sold in New

Orleans at the time they were sold. *Held:* In determining the character of a transaction as to whether or not it constitutes a wager, our supreme court has adopted the rule announced by the supreme court of the United States in Irwin v. Williar, 110 U. S. 508, as follows: "The generally approved doctrine in this country is, as stated by Mr. Benjamin, that a contract for the sale of goods to be delivered at a future day is valid, even though the seller has not the goods, nor any other means of getting them than to go into the market and buy them; but such a contract is only valid when the parties really intend and agree that the goods are to be delivered by the seller, and the price to be paid by the buyer; and if, under the guise of such a contract, the real interest be merely to speculate in the rise and fall of prices, and the goods are not to be delivered, but one party is to pay the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract, then the whole transaction constitutes nothing more than a wager, and is null and void." [Seeligson v. Lewis & Williams, 65 Tex. 215; 1 App. C. C. § 566.]

The attendant facts and the terms of the contract, as stated by the witnesses, are substantially: that appellee shipped from Taylor, Texas, to New Orleans, Louisiana, for sale, ninety-one head of cattle. Server, one of the appellants, saw the cattle the day they were shipped. On the following day appellee offered to sell said cattle to said Server for $550, but Server declined to purchase. Meantime, Server was receiving daily advices by telegrams from his correspondent at New Orleans as to the state of the market there. In a few days after appellee's offer to sell, Server instructed his partner, Bland, that if he saw appellee, and the latter would take $550 for the cattle, to buy them. Thereafter Bland met appellee and bought the cattle on the following terms: Appellee owed Bland $50, and had already drawn a check for $400 against the proceeds of the sale of said cattle. The cattle had not yet been sold in New Orleans. Bland testified:

"I then said (to appellee) I am to pay you $150 and take the sale bills of the cattle. He said, yes; and this was the trade we agreed upon. My supposition was that, when Brookshire received the sale bills from New Orleans, we would settle on the basis of me owing him $150, and him owing me the net proceeds of the cattle, and $50 which he owed me before the trade. And if the cattle sold in New Orleans for less than $550 net, I was to pay him the amount they fell short of that sum, less the $400 already drawn on them by him, and the $50 he owed me; but, if the cattle sold for over $550 net, Brookshire was to pay to me the excess over that amount." Brookshire testified to his understanding of the contract to the same effect. It was further agreed that appellants were to pay $16 inspection fees. Mr. Wharton says "a contract to purchase shares of stock or other chattels as a mere speculation, without any intention of receiving and holding them, is void as a gambling transaction under the English statute. In this country we have a series of decisions holding such agreements to be invalid whenever the understanding between the parties is that there is to be no delivery, but that only the difference between the contract price and market price at a designated time is to be paid." [1 Whart. on Cont. § 453, and note.] Under all the authorities, it seems that the true criterion by which to determine the nature of the transaction is as to whether or not the parties intended *that there should be a delivery of the property.* In this case appellants *bought the cattle.* Appellee was asked if he wanted to *sell the cattle.* He answered, yes; and says he *sold them* with the understanding that they were to net him $550. The price agreed upon for the cattle was fixed. It was not what they *might* bring in the market, but what they were then worth at the time of the trade. As soon as the trade was completed appellants became indebted to appellee for the *value of the cattle,* $550 — less what appellee had already received, and less $50 he owed Bland. The sale of the cattle being complete the title to

them passed to appellants, and the sale of the cattle in the market had nothing to do with determining the liability of appellants to appellee; for the former owed the latter $116 anyhow, although the cattle might never be sold in the market. As between the parties the property passes by a sale without delivery if such is the intention. [1 Pars. on Cont. § 529; Cleveland v. Williams, 29 Tex. 204; 1 App. C. C. § 926; Buffington v. Ulen, 7 Bush, 231; Bigler v. Hall, 54 N. Y. 167.] A sale of personal property must in general be accompanied by a change of the possession of the thing sold. The law does not, however, require the parties to a sale to perform acts extremely inconvenient, if not impossible, but accommodates itself to their business and the nature of the property; and, therefore, as some kinds of property are not susceptible of immediate manual delivery, the law requires only such delivery and change of possession as the nature of the property will allow. [Long v. Knapp, 54 Pa. St. 514; Bailey v. Ogden, 3 Johns. 399.] Thus, where goods are sold while at sea, the vendee acquires, without actual possession, *a constructive possession* sufficient to maintain trespass against any wrong-doer. [Howland v. Harris, 9 Mass. (C. C.) 497; 5 Wait's Act. & Def. 574, 575.] In this case an actual, manual delivery of the cattle was impracticable, but it is clear that the parties intended a *sale* of them; and, therefore, as between them there was a constructive delivery of said cattle, and a change of both title and possession. The sale of the cattle in the market had nothing to do with this constructive sale and delivery. The account of sales was simply a convenient method agreed upon by the parties as the basis for a settlement between them. It was not in any manner to affect the liability of appellants to appellee for the net value of said cattle — $550. That appellants were trading for the cattle with a view to a speculation by selling them in the market does not make the transaction a wager. We hold that said contract is a valid one.

March 13, 1889.          Reversed and rendered.