CASE 53.—ACTION BY MOSES LEVY'S ·ADMINISTRATOR AGAINST THE NEW YORK LIFE INSURANCE CO. TO RECOVER ON ALLEGED CONTRACT OF INSURANCE.—March 23.

## New York Life Ins. Co. v. Levy's Adm'r.

122   457
123   857

122   457
136   853

Appeal from Henderson Circuit Court.

· J. W. HENSON, Circuit Judge.

Judgment    for    plaintiff.    Defendant    appeals. Reversed.

Life Insurance—Creation of Contract—Acceptance—On December 30th deceased applied to defendant's local agent for $10,000 insurance, to be written in two $5,000 policies. On January 20th deceased paid the first premium to the agent under an agreement that he was to stand insured as of the date of the application, and on the same day decedent died. The day before the company had, at its general office, considered the application and rejected it for $10,000, but approved it for $5,000 and issued a policy therefor, which was sent to the agent, who delivered it to decedent's son. Held, that defendant's rejection of the proposal for $10,000 insurance ended all contractual relations, and there was no insurance for either amount at the time of the death.

CLAY & CLAY, JAMES H. McINTOSH and YEAMAN & YEAMAN for appellant.

### QUESTIONS DISCUSSED.

First. Moses Levy applied to the New York Life Insurance Co. for ten thousand dollars of insurance on his life. The company declined his application for ten thousand dollars, and authorized the issual of a policy for five thousand dollars. On the day following, and before the counter proposition was submitted to him, Levy died. No contract existed between the parties. (Hutcheson v. Blakeman, 3 Met. 80; Parsons on Contracts, page 399-499; Eliason v. Henshaw, 4 Wheat. (U. S.) 225; Jenness v. Mt. Hope Iron Co., 53 Maine 20; First National Bank v. Hall, 101 U. S. 43,

Weaver v. Burr, 3 L. R. A. 94; Mutual Life Insurance Co. v. Young, 23 Wall (U. S.) 85; Travis v. Nederland Life Ins. Co., 104 Fed. Rep. 846; Murapoles & Ry. v. Columbus Ry. Mill, 119 U. S. page 151; Taloe v. Merchants Fire Ins. Co., 9 Howard at page 401).

Second. Moses Levy knew the agent who solicited his application had no right to bind the company, and any contract he and the agent may have attempted to make is void. The fact that Levy could not read the provisions of the application does not change this. He should have had the application read to him. (Mudd v. German Ins. Co., 56 S. W. R. 977; Spitze v. B. & O. R. R. Co., 32 Am. St. R. 385; Albrecht v. Milwaukee etc. R. R. Co., 41 Am. St. R. 30; Fonseca v. Cunard Steamship Co., 25 Am. St. R. 660.

Third. The check for premium was given subject to the acceptance of the application. The application was rejected before the death of the applicant, and before the check for the premium was given. No contract existed between the parties.

Fourth. The application should have been construed by the court, and its construction should not have been submitted to the jury.

Fifth. A proposition for life insurance is personal. To be binding it must be accepted by the applicant during his own life. Personal representative has no right to accept proposition for his decedent.

Sixth. The questions involved in this case were purely questions of law and no instructions, other than a peremptory instruction to find for the defendant, should have been given.

Seventh. The premium of this insurance was not actually paid, and plaintiff could not maintain this action without first making a tender of the premium.

CROSS APPEAL.

First. Plaintiff is estopped from claiming under the second policy, by aceptance of the first one with notice of rejection of the second endorsed thereon.

Second. Reconsideration of application for life insurance after the death of applicant, and issual of policy thereon in ignorance of such death, which policy was never delivered or accepted, creates no contract of insurance.

DORSEY & STANLEY for appellee.

(The original brief for appellee not in the record).

OPINION OF THE COURT BY JUDGE BARKER—Affirming on the cross, and reversing on the direct appeal.

On the 30th day of December, 1903, Moses Levy, a citizen of Henderson county, Ky., made written application to the New York Life Insurance Company for $10,000 of insurance on his life, to be written in two policies of $5,000 each. This proposal for insurance was made through the company's agent, William Egard, who forwarded it to the main office in New York City. No cash premium was paid at the time of the application, but it is claimed that subsequently, on January 20, 1904, about the hour of noon, at the solicitation of the agent, William Egard, the applicant gave to him a check payable to the company, for $776.90, being the cash premium for one year's insurance for the amount applied for. At 11:45 p. m. of that day the applicant suddenly died. On the 19th of January, 1904, the company rejected the application for $10,000 of insurance, but approved it for $5,000, and in pursuance of this action wrote out a policy for this sum on the life of the applicant, conforming in all respects to his application, except in the amount of the policy and the annual premium therefor. This policy was issued on the 20th of January, and mailed to the company's agent at Henderson, Ky., where it was received on the 23d of January, and, although the agent knew of the death of Levy, he delivered it to Leon Levy, his son. The company did not receive notice of the death of Moses Levy until the 28th of January, 1904, and, in ignorance of this fact, on the 26th of January receded from its former determination to insure him for only $5,000, and issued a second policy, in all substantial respects similar to the first, and for-

warded it to its agent at Henderson. This, although received by Egard, was not delivered because of a telegram prohibiting his so doing; the company having in the meantime learned of the death of the applicant.

Leon Levy, the son of the applicant, was duly appointed and qualified as the administrator of his father's estate, and having made demand for payment of the whole amount of the insurance applied for, and being refused by the company, he instituted this action to recover the full som of $10,000, alleging in his petition, among other things, the following: "The plaintiff further states that on the 30th day of December, 1903, the decedent, Moses Levy, and the defendant entered into a contract of life insurance, by the terms of which the defendant agreed to and did insure the life of decedent and agreed to pay his administrator the sum of ten thousand dollars. The plaintiff further states that the said Moses Levy on the 30th day of December, 1903, at the instance and request of William Egard, an agent of the defendant, made a written application to the defendant for the sum of $10,000 insurance on his life. Said application was prepared by said agent and accepted by said company, and is now in the possession of defendant, and cannot be filed herewith. Said insurance was by the terms of said application, and by the agreement between said decedent and the defendant, to be divided into two policies of five thousand dollars each, which the defendant agreed to issue to said Moses Levy, and under their said agreement said policies were to be incontestable and non-forfeitable for any cause, and were to relate back to and be in force from the date of said application, which was the 30th day of

December, 1903.  It was also agreed by and between said decedent and said defendant, when the said application was made, viz., on the 30th day of December, 1903, in consideration, that said decedent would pay to the defendant the sum of $776.90, which sum he did pay on the morning of the 20th day of January, 1904, and the further consideration that said Moses Levy would pay to the defendant a like sum of $776.90 on the 30th day of December each year thereafter during the life of said Levy, the defendant agreed to pay to the administrator of said Moses Levy, immediately upon the proof of his death, the sum of ten thousand dollars ($10,000).  It was also agreed, at the time of making said application between said Moses Levy and the defendant, that as soon as the first premium was paid, which was in fact on the morning of January 20, 1904, that the said insurance should be incontestable and non-forfeitable for any cause, and should relate back to the date of said application, and be in force and effect from the date of said application, which was December 30, 1903.  It was further agreed by the said decedent and the defendant that if, for any cause, the defendant should refuse to issue both or either of said policies, then the insurance as agreed upon should be in force and effect until the decedent was notified of such refusal on the part of the defendant, and the premiums should then be returned to said Levy by the defendant, and said Levy was not notified of such refusal, nor was the premium returned to him.''  The defendant company filed an answer, denying all of the material allegations of the petition, including that of the payment of the premium by the applicant. Upon trial of the case, after all the evidence was in, the court awarded the defendant company a per-

emptory instruction to the jury to find for it on the second policy, and the jury, under the instructions of the court, found for the plaintiff (appellee) for the sum of $5,000, being the amount of the first policy, which had been delivered by the agent to him. From the judgments based upon these verdicts, the insurance company is here on direct, and the administrator has prosecuted a cross appeal.

The trial court was evidently of opinion that the issuance of the first policy of $5,000 was an acceptance pro tanto of the applicant's proposal to the company for insurance in the sum of $10,000, and therefore it became bound for the sum of $5,000, provided Moses Levy had paid over to Egard on the 20th of January the sum of $776.90 as a year's premium on the proposed insurance, as claimed by his administrator to have been done. This position, it seems to us, is not only unsound as a proposition of law, but in effect ignores the uncontradicted fact, shown by the appellee's own evidence, that the appellant company rejected the proposal for $10,000 insurance on the 19th day of January, 1904, which was the day before it is claimed that the premium was paid by the applicant, and thereby ended all contractual relations pending between the parties at that time. An application for insurance in no wise differs in principle from any other proposal to con-tract, and must, in order to bind the parties, be assented to in terms as broad and comprehensive as the proposition made.

On this subject Parsons in his work on Contracts (volume 1, 475) thus states the rule: "There is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense.

\* \* \* It becomes a contract only when the proposition is met by an acceptance which corresponds with it entirely and adequately.'' At star page 476, the author says: ''Many cases turn upon the question whether this assent to the proposition was entire and adequate. The principle may be stated thus: The assent must comprehend the whole of the proposition, it must be exactly equal to its extent and provisions, and it must not qualify them by any new matter. Thus an offer to sell a certain thing, on certain terms, may be met by the answer, 'I will take that thing on those terms,' or by an answer which means this, however it may be expressed; and if the proposition be in the form of a question, as, 'I will sell you so and so; will you buy? the whole of this meaning may be conveyed by the word 'yes,' or any other simple affirmative answer. And thus a legal contract is completed. But there are cases where the answer, either in words or in effect, departs from the proposition, or varies the terms of the order, or substitutes for the contract tendered one more satisfactory to the respondent. The respondent is at liberty to accept wholly, or to reject wholly, but one of these things he must do, for if he answers, not rejecting, but proposing to accept under some modifications, this is a rejection of the offer. The party making the offer may renew it; but the party receiving it cannot reply, acepting with modifications, and when these are rejected again reply, accepting generally, and upon his acceptance claim the right of holding the other to his first offer.''

In Page on Contracts, vol. 1, sections 45, 46, it is said:

''Sec. 45. The acceptance must, furthermore,

correspond to the offer at every point, leaving nothing open for future negotiations. An attempted acceptance, which leaves open the adjustment of the price, or the ascertainment of the capacity of the ship chartered, where that is a material term of the offer, or the time of delivery or of payment or an acceptance as to the price only, is without validity.

"Sec. 46. An attempted acceptance which seeks to modify one or more terms of the offer is of no legal effect as an acceptance. It is really a rejection of the offer, and a counter proposition in lieu of the original offer and must be accepted by the party making the original offer in order to constitute an agreement.   *   *   *;"

In the leading case in the Supreme Court of the United States (Eliason v. Henshaw, 4 Wheat., at page 228, 4 L. Ed. 556) Justice Washington states the principle here involved in the following language: "It is an undeniable principle of the law of contracts that an offer of a bargain by one person to another imposes no obligation upon the former until it is accepted by the latter, according to the terms in which the offer was made. Any qualification of, or departure from those terms invalidates the offer, unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both parties, the negotiation is open, and imposes no obligation upon either." In the leading case in this State on the subject (Hutcheson v. Blakeman, 3 Metc. 80) our court, in an opinion by Judge Wood, announces the principle under discussion, and expressly approves the quotation from Parsons and the opinion in Eliason v. Henshaw.

The case of Minneapolis & St. Louis Railway v.

Columbus Rolling Mill, 119 U. S. 149, 7 Sup. Ct. 168, 30 L. Ed. 376, was identical in principle with that at bar. The railway company made the following request of the rolling mill company: "December 5, 1879. Please quote me prices for 500 to 3,000 tons 50-pound steel rails, and for 2,000 to 5,000 tons 50-pound iron rails, March, 1880, delivery." On December 8, 1879, the following reply was made to the above letter: "Your favor of the 5th inst. at hand. We do not make steel rails. For iron rails, we will sell 2,000 to 5,000 tons of 50-pound rails for fifty-four ($54.00) dollars per gross ton for spot cash, f. o. b. cars at our mill, March delivery, subject as follows," etc. On December 16, 1879, the railway company telegraphed the mill company: "Please enter our order for twelve hundred tons rails, March delivery, as per your favor of the 8th. Please reply." To this the railway company received the following answer by telegraph: "We cannot book your order at present at that price." Thereupon the railway company sent another telegram: "Please enter an order for two thousand tons rails, as per your letter of the eighth. Please forward written contract. Reply." The rolling mill company denied the existence of any contractual relations between it and the railway company growing out of this correspondence, with the result that the latter brought suit for breach of contract. It will be observed that the rolling mill company proposed to sell to the railway company from 2,000 to 5,000 tons of iron rails at a given price, and from the railroad company accepted to the extent of 1,200 tons only; the difference between the minimum proposition of the rolling mill company and 1,200 tons, the amount ordered by the railway com-

pany, being the only difference between the offer and acceptance, just as in the case at bar, the offer of Moses Levy for $10,000 of insurance, and the counter proposition, contained in the issuance of the first policy of $5,000, being only a difference of amount. In delivering the opinion of the court, Mr. Justice Gray said: "The rules of law which govern this case are well settled. As no contract is complete without the mutual assent of the parties, an offer to sell imposes no obligation until it is accepted according to its terms. So long as the offer has been neither accepted nor rejected, the negotiation remains open, and imposes no obligation upon either party, the one may decline to accept, or the other may withdraw his offer, and either rejection or withdrawal leaves the matter as if no offer had ever been made. A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested. The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance of it. Eliason v. Henshaw, 4 Wheat. 225, 4 L. Ed. 556; Carr v. Duval, 14 Pet. 77, 10 L. Ed. 361; National Bank v. Hall, 101 U. S. 43, 50, 25 L. Ed. 822; Hyde v. Wrench, 3 Beav. 334; Fox v. Turner, 1 Ill. App. 153. If the offer does not limit the time for its acceptance, it must be acepted within a reasonable time. If it does, it may, at any time within the limit and so long as it remains open, be accepted or rejected by the party to whom, or be withdrawn by the parties by whom, it was made. Boston & Maine Railroad v. Bartlett, 3 Cush. (Mass.) 224; Dickerson v. Dodds, 2 Ch. D. 463. The defendant,

by the letter of December 8th, offered to sell to the plaintiff 2,000 to 5,000 tons of iron rails on certain terms specified, and added that, if the offer was accepted, the defendant would expect to be notified prior to December 20th. This offer, while it remained open, without having been rejected by the plaintiff or revoked by the defendant, would authorize the plaintiff to take at his election any number of tons not less than 2,000 nor more than 5,000, on 'the terms specified. The offer, while unrevoked, might be accepted or rejected by the plaintiff at any time before December 20th. Instead of accepting the offer made, the plaintiff, on December 16th, by telegram and letter, referring to the defendant's letter of December 8th, directed the defendant to enter an order for 1,200 tons on the same terms. The mention, in both telegram and letter, of the date and the terms of the defendant's original offer, shows that the plaintiff's order was not an independent proposal, but an answer to the defendant's offer, a qualified acceptance of that offer, varying the number of tons, and therefore in law a rejection of the offer. On December 18th the defendant by telegram declined to fulfill the plaintiff's order. The negotiation between the parties was thus closed, and the plaintiff could not afterwards fall back on the defendant's original offer. The plaintiff's attempt to do so, by the telegram of December 19th, was therefore ineffectual, and created no rights against the defendant.''

In the case of National Bank v. Hall, 101 U. S. 43, 25 L. Ed. 822, the court, speaking through Mr. Justice Swayne, said: ''A proposal to accept, or acceptance upon terms varying from those offered, is a rejection of the offer. Baker v. Johnson county,

37 Iowa, 186.   See, also, Jenness v. Mount Hope
Iron Co., 53 Me. 20; Chicago & Great Eastern Rail-
way Co. v. Dane. 43 N. Y. 240; and Suydam v.
Clark, 2 Sandf. (N. Y. 133.'' To the same purport
it Weaver v. Burr (W. Va.) 8 S. E. 743, 3 L. R. A.
94; Mutual Life Insurance Co. v. Young, 23 Wall.
85, 23 L. Ed. 152; Travis v. Nederland Life Insurance
Co., 104 Fed. 486, 43 C. C. A. 653; Tayloe v. Mer-
chants' Fire Insurance Co., 9 How. 401, 13 L. Ed.
187.   It results from the foregoing authority that the
declination of the insurance company, on the 19th
day of January, 1904, to accept Moses Levy as an
insurable risk to the extent of $10,000, although it
approved his application to the extent of issuing
a policy for $5,000, was a rejection of his proposal
for $10,000 of insurance, and the issuance of the
policy for $5,000 was a new proposition, which he
could accept or reject, as he saw fit.   His death on
the same day, January 20th, the policy for $5,000 was
issued, and before it was sent from New York, of
course, precludes the idea that he accepted it.   This
conclusion as to the legal effect of what happened
in the office of the insurance company in New York
obviates the necessity of any discussion of the merits
of the administrator's rights predicated upon the
payment of the premium by Moses Levy on the 20th
day of January.   The company having rejected his
application on the 19th, no contractual relations
existed between him and it, and there was therefore no
consideration or basis for his payment to Egard of
the premium on the policy which he had applied for,
but which had been refused.   All of that part of the
discussion on this branch of the case may be, there-
fore, laid aside as inapplicable to the merits of the
litigation, and those authorities relied upon as up-

holding the administrator's contention, that, after the payment of the premium, his decedent was insured until he had notice of the rejection of his application, are inapposite to the case at bar, for the reason that no premium was paid until after the rejection of the applicant's offer. It is therefore idle to speculate as to what would have been the decedent's rights if he had paid the insurance premium to Egard during the pendency of the application of insurance, or how far Egard was authorized to bind his company by statements conditioned upon the prepayment of the premium. As no such payment was made during the existence of the application, the reasoning predicated upon this hypothesis falls to the ground.

Appellee does not pretend that the application of Moses Levy for $10,000 of insurance on his life was anything more than an offer on his part to contract with the insurance company until after he paid the premium. His witness, Egard, states positively that he explained to the old man that he would not be insured under the application until after he had paid his premium, and that after the payment of the premium he would stand insured as of the 30th of December, 1903, provided the company finally accepted his application. But the administrator contends that Egard said that the applicant, after the payment of the premium, would stand insured as of the 30th of December, 1903, and remain insured until after notice that his application was rejected. But by neither was it pretended that, without the payment of the premium, the applicant was insured as of the 30th of December, 1903, or from any other date, and this view is fully set out in the petition.

Appellee's whole case is predicated upon the theory that under the contract of the applicant with the agent, after the payment of the premium, the former would stand insured as of the 30th of December, 1903, until notice of the rejection, and that, as he died before receiving such notice, it is claimed he is entitled to the $10,000. We do not find it necessary to enter into any further discussion of this phase of the case. The fact is not disputed that the money was not paid until after the 19th of January, 1904, at which time the company declined the proposition to insure the applicant for $10,000, but offered to insure him for $5,000, which, as we have seen, was a rejection of his offer as a whole, which at once terminated all the theretofore existing contractual relations between the parties. It results, therefore, that at the time of the applicant's death there was no contract of insurance between him and the appellant company, and the court should have sustained the latter's motion for a peremptory instruction to the jury to find for it on the whole case.

The judgment is affirmed on the cross, and reversed on the direct, appeal, for proceedings, consistent with this opinion.

JUDGE NUNN—Dissenting. The court in its opinion did not discuss or pass upon the real question involved in this appeal. No one will take issue with the court in its opinion on the proposition that, to make a binding contract, the minds of the parties must meet. When one party makes a proposition, the other must accept the same, without any material change, to make it a contract. It is conceded by all that insurance may be obtained by oral or written contract, which will bind the company, until its

officials shall pass upon and reject the application. One Egard was the agent of the company who took Levy's application for the insurance. The printed form of application furnished him by the company, together with other proof, shows that he had the power and authority to enter into a contract with Levy, in consideration that Levy paid the premium in cash, to bind the company to take the risks on Levy's life from that moment, for the term of twelve months, or until the company by its officials, had rejected the application and given the applicant notice thereof. The record shows that the agent, Egard, so explained the matter to Levy, and urged him to then pay the cash. The agent continued from the date of the application, December 30th, to the 20th of January, to urge Levy to pay the cash and let the company take the risk. On the morning of the 20th the agent entered the store of Levy and again urged him to pay the premium, and as an inducement proposed to buy from him some furniture. Then Levy delivered to the agent, for the company, the amount of the first premium, and took a receipt for same.

In the application for insurance made the 30th day of December, 1903, and signed by Levy, the following appears: ''That the insurance under any policy issued, on this application, shall take effect as of date of this application, unless otherwise agreed in writing.'' The policies that were issued were both dated December 30, 1903. The last one was issued, however, on the 26th of January, 1904. The company contends, however, that it did not assume or carry any risks until the issual and delivery of the policy, in the lifetime of the assured. This is an unreasonable and unfair construction of the contract.

It was understood and agreed that Levy was to pay the first premium, $776.90, in consideration that the company would insure him for twelve months. Yet we find the company issuing a policy on the 26th of January, and dating the policy back to the date of the application, December 30, 1903, and claim it had not insured the applicant and that it had not assumed the risks until the issual and delivery of the policy, and as he was dead it was not liable. To sustain this contention allows the company to collect a premium for twelve months' insurance, and yet only actually insure for about eleven months. There is evidently something wrong with this construction of the contract. If the company's construction, as upheld by the majority opinion, is correct, it is easy to understand how those in charge of insurance companies can waste and misappropriate so much of the policy holders' money by contributing it to aid in political campaigns, and other ways, and yet remain solvent. In the receipt attached to the application this language appears: "That if a policy be not issued on said application and examination within sixty days from this date (meaning in this case December 30, 1903) said sum (meaning the first premium of $776.90) will be returned or surrendered on surrender of this receipt to the company." Here we have a stipulation that the company may hold and use the premium for sixty days without any assumption of risks on its part, and then, if it declines to accept the risk, it shall return the money, without accounting for interest, but if it concludes, at the end of 60 days, to approve the application and accepts the risks, it issues a policy and dates it back to the date

of the application, and secures a premium from the insured sufficient in amount to pay for insurance for twelve months, and, in fact, the insured only receives ten months' insurance. The amount that each policy holder is beaten out of is comparatively small, but when you consider the millions upon millions of policy holders, the total amount made in that way by the company is immense. But the application contains another clause as follows: "That any payment in advance on account of premium shall be binding on the company only in accordance with the agent's or cashier's receipt therefor on the company's authorized form."

What does this mean? Is it possible that this language was used for the purpose only of binding the company to return the premium to the applicant in case it rejected his application? Certainly this was not the purpose of that clause. There was no clause needed to compel it to perform that simple and just act. Is it possible that the company by the use of this language meant to be understood that it was not bound to return a premium it had received from an applicant for insurance, when the application had been rejected by it, unless its agent or cashier had drawn the receipt in a particular manner and upon one of the company's authorized forms? This construction of that clause is absurd. The meaning and purpose was to bind the company to carry the insurance on the applicant from the time of the payment of the premium for twelve months, or until the company rejected the application and notified the applicant thereof. But the company says it did not assume, nor was it bound for, the risk, because its agent in receiving the money from Levy did not give him a receipt upon one of its authorized

forms. This and other courts have often decided that persons sui juris cannot in advance bind themselves that they shall only be bound by contracts made in a particular way or written or printed upon a particular form, or kind of paper.

If I understand the majority opinion, it is, in effect, conceded that if Levy had paid the premium prior to the rejection of his application, and this date is fixed as the 19th of January, he would have been insured to that time; but at the moment of rejection the risk of the company would have ceased. I am at loss to understand upon what authority or sound reason the court assumes such a position. It leaves the applicant in an unenviable position, without insurance, without his money to buy other insurance, and ignorant of the fact whether he would be compelled to apply to some other company for it.

The opinion states that the rejection of the application took place on the 19th of January. I find written on the face of the original application the following: "Jan. 20, 1904. Approved for $5,000.00." "Jan. 26, 1904, approved for $5,000.00." The proof shows that this was done at the home office of the company. The court construes the approval of the first $5,000 as a rejection of the application. This is rather a strained construction, but concede it to be correct, in my opinion it did not relieve the company of the risk it incurred on the morning of the 20th of January, when it received the money from Levy for the first premium, and as Levy died before the return of the premium, and before he was notified of the rejection of his application, the benficiary named in the application should be permitted to recover.

But the court says in substance, although the agent

taking Levy's application had the power to receive the first premium, and bind the company, yet the proof shows that this power and authority of the agent was limited so that it could not incur any risk, unless the company approved the application. To illustrate this proposition: Suppose on the 30th day of December, 1903, Levy had paid the company the first premium, and the authorized form of receipt of the company had been executed, and the company then said to Mr. Levy, "You are now insured and will remain insured until the expiration of 60 days, unless we within that time reject your application, in which event you have never been insured." If such was the contract, and the appellant had died before the issual of the policy, all the company would have had to do to relieve itself from the loss would have been to reject the application. Suppose some witness did in effect make this statement; can this court believe, or is it compelled to believe, that an insurance company or an individual would make such an unfair and unconscionable a bargain with any one, or, if made, is it possible that this court will uphold such an agreement? "I take your money, and you are insured from this moment, provided I accept your application, but I take 60 days to consider your application, and if you die before I issue your policy I will reject it, and relieve myself of responsibility." This, in substance, is the contract that the court says was proven in this case.

For these reasons, I dissent from the opinion of the court.