LEON S. HARMON
*vs.*
MAXIMILIAN B. ROESSEL

Oxford.　Opinion, December 16, 1957.

*Albert J. Stearns,*
*Robert T. Smith,* for plaintiff.

*Franklin Stearns,* for defendant.

Sitting: Williamson, C. J., Webber, Beliveau, Sullivan, Dubord, JJ. Tapley, J., did not sit.

Sullivan, J. This is an action for alleged breach of contract. The plaintiff avers that in March he owned a furnished cottage which he rented and reserved to the defendant for occupancy at $75 per week during five, specific and consecutive weeks of the summer which followed; that the defendant declined to avail himself of the cottage and has refused to pay the rental. The defendant denies any contract or legal relationship with the plaintiff and urges the Statute of Frauds in bar.

Following the completion of evidence by both parties the defendant moved for a directed verdict which was granted. The plaintiff excepts. His exceptions

"- - - have the effect of bringing up all the evidence and raising the question of law, whether upon that evidence the case should have been submitted to the jury."

*Dyer* v. *Power & Light Company*, 119 Me. 224, 225.

Admitted in evidence for the plaintiff were the following letters comprising correspondence between the parties:

"MAXIMILIAN B. ROESSEL

Phone: Newton 1311-J
R. D. 2 — Box 103
Newton, New Jersey
Mar 23, 1956

L. S. Harmon
Lovell, Maine

Dear Mr. Harmon,

Earl wrote that you have 3 cottages for rent on *the* lake. Would you be kind enough to send me description and amount of rent. I would be interested for July and August.

Also please send information to the following, and tell them I asked you to.

Mr. T. B. Roessel, 2154 Westfall Rd. Rochester 18, N. Y.

Mr. H. G. Hesse, 161 N. Woodland St. Englewood, N. J.

Mr. R. I. Ballinger, Barnwood, Radnor, Pa.
We will be up to see Earl around May 7 and will see you then.

Very truly yours,

M. B. Roessel"

- - - - - - - - - - - - - - - - - - - - - - - - - -
"Dear Mr. Roessel:

Rec'd. your letter concerning our cottage, they are all built on the same floor plan and consist of 2 bedrooms full bath large living room with stone fireplace and built in bunks fully equipped kitchen with electric range, refrigerator and water heater, plus large screened porch, and we furnish everything except the bed linens. Our price is 75 per week. One cottage is *booked* until *July 23* one until *July 24* and the *other* to *Aug. 5.*

If you are interested would be *glad to reserve one* or all after the above dates for as long as you would wish, but would have to have an immediate reply as requests are coming in especially fast this year.

Am enclosing a snapshot of ex and interior."

- - - - - - - - - - - - - - - - - - - - - - - - - -
"MAXIMILIAN B. ROESSEL

Phone: Newton 1311-J
R. D. 2 — Box 103
Newton, New Jersey
Mar 31, 1956

Dear Mr. Harmon,

With the provision that the road into the cottage is passable to these low slung cars, and that a boat

dock is available, we will take the cottage which is available on July 24 and until Aug 28 - - 5 weeks. Since we will be up there about May 7, we will see you then, at which time we can complete our arrangements. There may be 6 of us, unless some of the kids go to camp. We should know by then. Say Hello to Earl Roby when you see him.

Very truly yours,

M. B. Roessel"

- - - - - - - - - - - - - - - - - - - - - - - - -

"MAXIMILIAN B. ROESSEL

Phone: Newton 1311-J
R. D. 2 — Box 103
Newton, New Jersey
May 14, 1956

Dear Mr. Harmon,

When we got home, and before you called, our friends in Phila. - - the Leydons, offered us and we took their cottage for the time we wanted it. Too bad your call was not a few hours sooner.

However, Mr. Hesse also wants to come up earlier, and will, in all probability take the cottage you have for us after 15th of July. He will call you this week to complete arrangements.

I sure hope all this *horseing around* has not inconvenienced you.

Yours very truly,

M. B. Roessel"

- - - - - - - - - - - - - - - - - - - - - - - - -

The subject matter of negotiations by the parties was the renting for a determinate period of a cottage completely furnished save for bed linens. Arguments have been waged as to whether the transaction contemplated was to effect a license or a lease. We find such a distinction expendable in this case.

The construction of the correspondence in evidence and set forth above, was for the presiding justice.

"The construction of all written instruments belongs to the Court."

*Wigmore on Evidence,* § 2556.

"Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; - - - - -"

53 Am. Jur., § 266, P. 223.

"- - - Whether the contract, if so made, is a legal and binding contract, under the evidence in the case, is a question of law which this court must determine independently of the finding of fact by the jury." *Congregation* v. *Savings Bank,* 120 Me. 178, 181.

The letters admitted were offered as a sufficient memorandum or in evidence of a contract. It was for the court as a matter of law to construe them.

The letter of the defendant to the plaintiff, dated March 31, 1956 was not an unequivocal or unqualified acceptance of the offer which had been submitted in the earlier communication of the plaintiff to the defendant. The reply of March 31, 1956 contained three reservations. It was conditioned upon the road into the cottage proving passable to low slung cars, upon the availability of a boat dock and upon a completion of arrangements to follow about May 7th. The road and the dock facility were not mentioned in plaintiff's first letter but were injected by the defendant in his reply thereto of March 31st, 1956, as fresh matter. The defendant in his, same letter informed the plaintiff that the former would not know until May 7th how many of defendant's family would use the cottage. The correspondence thus failed to demonstrate a meeting of the minds or to capture the requisites of a contract. Such is obvious and is a matter of law.

"- - - we look in vain to find in it evidence of a contract *completed;* — a proposition by one party, accepted without modification, by the other."

*Jenness* v. *Mount Hope Iron Company,* 53 Me. 20, 22.

It remains, then, to be decided if the deficiencies of the written evidence were supplied by parol evidence at least to the extent of providing some basis for a finding favorable to the plaintiff.

The testimony of all establishes that the defendant in May called upon the plaintiff and went to the cottage property. No statement of the defendant accepting a contract to rent or occupy the cottage is made or quoted. The behavior and acts of the defendant are non-committal and without involvement. The following is the reported colloquy as to that:

*Plaintiff's testimony.*

Q   And where did they come to visit? Were you at the camp when they first saw you, them?

A   I was.

Q   What was the conversation? What took place at that time?

A   Practically no conversation. Looked the camp over, apparently thought it was all good and everything. Only question was, Mrs. Roessel wanted to know if there was an electric flat iron, and I said if there wasn't we would have one. Never mentioned the dock or nothing.

Q   Did they go over the road to the camp?

A   That's right.

Q   Were they shown the boat dock?

A   The dock was right out front. I didn't show it to them.

Q   Was anything in there, do you know, or words indicating there was any dissatisfaction with the camp?

A   Not that I could see.

Q   And did they say when they were coming down next?

A   No.

*Cross - Examination*

Q Now, in what state was the dock, was the dock or two docks, when Mr. Roessel came down?

A The ones there at that time?

Q Yes.

A They was stationary. Not floating. He wanted barrel floating docks.

*Plaintiff's wife*

Q You talked about the period of occupancy between July 24th to August 28th.

A That is, he was - - it was understood he was on his way to see if it was what he wanted.

There is no testimony that a barrel floating dock was supplied before August 28th, 1956 although the plaintiff testified that one was at the situs at the time of the trial in February, 1957.

The evidence left no alternative to the presiding justice but to direct a verdict for the defendant.

*Exceptions overruled.*